## APPEAL OF H. B. HILL.

Docket No. 1689. Submitted May 21, 1925. Decided February 15, 1926.

1. Salary received by an officer of a corporation and returned thereto under a salary adjustment prior to the close of the taxable year should not be included in his gross income.

2. Under the circumstances of this appeal, a reasonable annual allowance for the exhaustion of the contract is that proportion of the cost which the income received in each year bears to the total income to be derived from the contract.

*O. B. Irwin, Esq.*, for the taxpayer.
*J. Arthur Adams, Esq.*, for the Commissioner.

### Before MARQUETTE and MORRIS.

This is an appeal from the determination of a deficiency of $1,402.12 in income tax for the year 1920, arising from the inclusion in gross income of $2,500 as salary received by the taxpayer from the Commercial Health & Accident Co., and $2,205.37 renewal commissions, reduced by $600 depreciation on the cost of the contract under which such commissions were received from the Central Life Insurance Co.

#### FINDINGS OF FACT.

The taxpayer is a resident of Springfield, Ill. During the taxable year in question he was president and a director of the Commercial Health & Accident Co., a corporation organized under the

laws of the State of Illinois. In determining salaries at the annual meeting each year the directors took into consideration the fact that the assessment law of the State of Illinois would not permit of an increase in salaries after they had once been fixed by the board of directors, so in anticipating the increase in business they always determined the amount of salary that they would attempt to draw during the year, and set it at the highest possible point, so that if business improved they could draw that salary; on the other hand, if the claims were high and the business would not justify that salary, there was an understanding that they would turn back part of the salary they had drawn. The directors were also officers of the company. The following is an excerpt from the minutes of the regular meeting of the board of directors held January 12, 1920:

The matter of salaries of officers of the ensuing year was then discussed, and, upon motion made, seconded, and unanimously carried the following yearly salaries were authorized to be paid monthly:

| | |
|---|---|
| H. B. Hill, President _____ | $2, 400 |
| H. G. Rockwood, 1st vice-president _____ | 2, 400 |
| F. M. Jeffer, 2nd vice-president _____ | 2, 400 |
| G. C. Rockwood, Secy.-Treas _____ | 2, 400 |
| Dr. J. R. Neal, Medical Director _____ | 1, 500 |

During the year 1920 the taxpayer received twelve checks for $250 each, which were drawn " for salary." Toward the close of the year the directors found that the reserve required by law had been depleted through the payment of claims and that it would have to be increased by $10,000 in order that the annual report would be accepted by the Insurance Department of the State of Illinois. At an informal meeting of the directors it was decided to return that amount to the company, and on December 23 they purchased $10,000 of second Liberty loan bonds and turned them over to the company, each contributing $2,500. This amount was entered on the books of the company as "Advanced by officers," but on December 31, 1920, the latter account was charged and the general fund, the account to which salaries had been charged, was credited with the same amount. The Insurance Department of the State of Illinois, after the annual report of the company had been filed, required the officers to execute and file a release to the company to the effect that they had no claim whatever on the money returned to it. No part of the taxpayer's $2,500 has ever been returned to him. In a similar transaction, which took place about two years before, $4,000 was returned to the company.

By a contract dated October 22, 1910, the taxpayer became a general agent of the Central Life Insurance Co. of Illinois, under the terms of which he was to receive a certain percentage on the first nine renewal premiums paid to the company upon each policy

written under said contract. He was actively engaged in writing insurance under this contract until August, 1916. Thereafter he continued to receive his commissions on the renewal premiums until September 16, 1918, at which time he made an assignment of his right to the renewal commissions to L. H. Fouche. December 31, 1919, he repurchased the rights of Fouche under the contract for $4,000, and from that time received the commissions upon the renewal premiums paid to the company. The commissions received by the taxpayer during the year 1920 were $2,205.13; 1921, $2,018.21; 1922, $1,250.53; 1923, $740.61; 1924, $391.44. The estimated commission for 1925, based on the amounts received during the first four months, is $150. The last renewal premium under the contract is due in August, 1926.

In his return for the year 1920 the taxpayer reported a salary of $500 from the Commercial Health & Accident Co., and did not report any part of the renewal commissions of $2,205.13 received in that year from the Central Life Insurance Co. of Illinois.

#### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 10 days' notice, under Rule 50.

#### OPINION.

MORRIS: The first question involved in this appeal is whether the taxpayer should include in his return for the year 1920, $2,500 which he received from the Commercial Health & Accident Co. and returned to it during that year. The taxpayer contends that his salary for the year was $500, due to a salary adjustment having been made prior to the close of the taxable year, while the Commissioner's position is that the $2,500 returned to the corporation was a contribution to capital. We are convinced from the evidence that there was an understanding among the officers and directors of the corporation that salaries should be set at the highest possible point in the hope that the business would justify them, but if unexpected claims developed, thereby reducing the income of the corporation, the officers would refund a portion thereof. All of the officers and directors of the corporation were active in the conduct of its business and interested in its success.

Toward the close of the year 1920 it was found that the reserve required by law had been depleted through the payment of claims, and that it would have to be increased to the extent of $10,000. At an informal meeting the directors decided to return that amount to the company in accordance with their understanding. On December

23 they purchased $10,000 of second Liberty loan bonds and turned them over to the company, each contributing $2,500. It appears to us that the effect of this action was to modify any prior agreements as to salaries for the year 1920 and to substitute therefor the amounts which were actually retained by the respective officers. We have held in the Appeal of H. C. Couch, 1 B. T. A. 103, that—

Salary arrangements between corporations and their principal stockholders and managers in cases like this one, where the manager is expected by his associates to protect the interests and the future prospects of the company even at a sacrifice to himself, are and must be at all times subject to such modifications as may be made by agreement from time to time; and it appears to us that the arrangement entered into by this taxpayer and this corporation in the month of December, 1920, clearly shows an intent on the part of both sides to modify the prior existing agreements in regard to this taxpayer's compensation.

We are of the opinion that the principle therein announced is controlling in this appeal, and that therefore the salary from the Commercial Health & Accident Co. to be reported in the taxpayer's return for the year 1920 is $500.

No question is raised under the second issue as to the right of the taxpayer to a recovery of the $4,000 paid for the contract with the Central Life Insurance Co. of Illinois, but the basis upon which it shall be recovered is in dispute. The taxpayer contends that he is entitled to a recovery of the $4,000 before any part of the renewal commissions should be reported, while the Commissioner has allocated it ratably over the period during which it is expected such commissions will be received, which is six and two-thirds years. There is one distinctive feature of this contract upon which we believe the solution of the problem rests. Commissions are paid on the first nine renewal premiums on each policy written thereunder. The last policy was written in 1916, so it is apparent that the number of renewal premiums upon which the taxpayer is entitled to commissions is gradually diminishing, although the policies remain in force. The cancellation of policies through death or the nonpayment of premiums also eliminates the possibility of the taxpayer's receiving further income from them. The net result is that the taxpayer is realizing a diminishing income from the contract, not by reason of fluctuating business conditions, but by reason of the nature of the contract itself. Section 214 (a) (8) provides for a reasonable allowance for the exhaustion, wear and tear of property used in a trade or business. We are of the opinion that the yearly allowance, in order to be reasonable and permit a recovery of the capital investment under the circumstances of this appeal, should be that proportion of $4,000, the cost of the contract, which the income received in each year bears to the total anticipated income under the contract.

The commissions for the years 1920, 1921, 1922, 1923, and 1924 are definitely known and constitute substantially all the income that will be received.