FLOYD L. TURNER AND HELEN H. TURNER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88286.    Filed May 18, 1962.

*Irwin G. Stirgwolt, Esq.,* and *Clark E. Loofbourrow, Esq.,* for the petitioners.
*Henry T. Nicholas, Esq.,* for the respondent.

MULRONEY, *Judge:* The respondent determined deficiencies in petitioners' income tax for the years 1956, 1957, and 1958 in the amounts of $1,204.28, $4,042.63, and $780.81, respectively.

All of the adjustments to income determined by respondent or asserted in pleadings have been disposed of by stipulation with the exception of the single issue presented here, which is: Does the sum of $14,603.45 received by petitioner under a contract of sale dated February 21, 1957, constitute ordinary income or capital gain?

FINDINGS OF FACT.

Some of the facts have been stipulated and they are found accordingly.

Petitioners are husband and wife residing in Columbus, Ohio. They filed their joint income tax returns for the years in question with the district director of internal revenue at Columbus, Ohio. Floyd Turner, who will hereafter be referred to as petitioner, has been

in the insurance business since 1929 and an insurance broker since 1943.

On July 26, 1945, petitioner acquired from Eaton and Endly Insurance of Lima, Ohio, the right to receive insurance commissions to be paid on certain "professional men's group accident and health insurance" policies for $3,267.68. At the time of this acquisition there was $16,338.40 in annual premiums in force on these policies, and the annual commissions to be paid under these policies were 20 percent of the annual premiums. The amount paid by petitioner to acquire the right to receive these commissions was the "annual commission" due under the policies, which was 20 percent of $16,338.40, or $3,267.68. The policies in question were written by the Metropolitan Casualty Insurance Company of New York and were all subject to the following terms which are printed on the face of the individual policies:

This policy is issued in consideration of the payment of the initial premium stated in the Schedule. After taking effect this policy shall continue in force until the first renewal premium due date, subject to the grace period hereinafter provided. It may be continued for succeeding renewal terms by the payment of the renewal premium when due.

### RENEWAL CONDITIONS

The Company reserves the right to decline to renew this policy on any of the following grounds only:

A. Because of nonpayment of premium.

B. After the Insured reaches his seventieth birthday.

C. If the Insured retires or ceases to be actively engaged in the duties of his profession or occupation, except by reason of disability covered under the terms of this policy.

D. If the Insured ceases to be an active member of the above named organizaton.

E. If the Company declines to renew all such policies issued to members of the above named organization, upon giving at least sixty days written notice of such declination prior to the renewal date of the policies.

Barring the death of an insured, unless these policies were canceled or allowed to lapse petitioner would continue to receive the 20-percent commission on annual premiums paid with respect to the policies in force.

On July 24, 1950, petitioner acquired from William B. Treacy, d.b.a. W. B. Treacy Associates, the right to receive insurance commissions to be paid on certain "accident and sickness insurance" policies for $4,250. At the time of this acquisition there was $9,445 in annual premiums in force on these policies. The annual commissions to be paid under these policies were 20 percent of the annual premiums. The policies were written by the Massachusetts Casualty Insurance Company of Boston, Massachusetts. At the top of the face of these policies appears the following statement in bold type:

This Policy is Non-Cancellable and Guaranteed Renewable to Age 65 and provides indemnity for Loss of Limb, Sight or Time by Accidental Bodily Injury or by Sickness to the extent herein provided.

At the top of page two of these policies appears the following statement:

NON-CANCELLABLE TO AGE 65

The Insured shall have the right to continue this policy in force by the payment of the premium as set forth in the insuring clause (plus the premium for attached riders, if any) when due until he shall have attained the age of 65. If the Company accepts a premium applicable wholly or in part to a period subsequent to the sixty-fifth anniversary of the Insured's birth, the insurance provided hereunder will continue in force but only until the end of the period for which any premium has been accepted.

Barring the death of an insured, unless these policies were allowed to lapse, petitioner would continue to receive the 20-percent commission on annual premiums paid with respect to the policies in force.

On February 21, 1957, petitioner entered into the following contract:

*CONTRACT OF SALE*

This agreement made and concluded at Columbus, Ohio, this 21st day of February, 1957, by and between Floyd L. Turner, party of the first part, and Arthur E. Shepard, party of the second part,

Witnesseth, that the parties hereto are engaged in the general insurance business, having mutual interests in various insurance enterprises, and

Whereas the party of the first part now owns and controls sole agency rights to certain group, accident and health contracts written by Commercial Casualty Insurance Co. of Newark, N.J., Metropolitan Casualty Insurance Co. of N.Y. and Massachusetts Casualty Insurance Co., and

Whereas it is the intention of the party of the first part to sell the party of the second part a one-half (½) interest in said contract rights and it is the desire of the purchaser to acquire said one-half (½) interest in said accident and health contracts;

Therefore, by this agreement the party of the first part does hereby sell, transfer, set-over and assign an undivided one-half (½) interest to the party of the second part in the following health and accident matters:—

347   Group accident and health contracts written by Commercial Casualty Insurance Co. of Newark, N.J. for members of the Columbus Academy of Medicine.

99   Group accident and health contracts written by Metropolitan Casualty Insurance Co. of N.Y. for members of the Ohio State Pharmaceutical Association in Districts #4, William A. Rudd, Agent; #5, Dorsen Watts, Agent; #6, Jordon Braun, Agent; #7, and #8, Lowell Weaver, Agent.

76   Individual accident and health contracts written by Massachusetts Casualty Insurance Co.

Now in consideration of the transfer of the foregoing interest, the party of the second part agrees to pay the party of the first part the sum of Fourteen Thousand Six Hundred and Three Dollars and Forty-Five Cents ($14,603.45), receipt of which is hereby acknowledged by the party of the first part.

It is agreed by the parties hereto that the effective date of this agreement shall be January 1, 1957, and that all rights, adjustments, corrections and settlements shall be on the basis and with the same effect as if this contract had been executed on said effective date.

The party of the first part represents that his interest in the above matters are free, clear and unincumbered.

In witness whereof, the parties hereto have executed this agreement the day and date first above mentioned.

Wittnesses: [*sic*]

(s) Florence V. Long                      (s) Floyd L. Turner
                                          FLOYD L. TURNER
                                          *Party of the First Part*

(s) Florence V. Long                      (s) Arthur E. Shepard
                                          ARTHUR E. SHEPARD
                                          *Party of the Second Part*

The 99 group accident and health policies written by the Metropolitan Casualty Insurance Company were those originally acquired from Eaton and Endly Insurance and still remaining in force. The annual premiums in force at the time of this contract amounted to $10,041.20. The 76 individual accident and health contracts written by the Massachusetts Casualty Insurance Company were those originally acquired from William B. Treacy and still remaining in force. The annual premiums in force at the time of this contract amounted to $6,900.66.

The 347 group accident and health contracts written by the Commercial Insurance Company of Newark, N.J., were produced through petitioner's own efforts and were subject to the following terms which are printed on the face of the individual policies:

This policy is issued in consideration of the payment of the initial premium stated in the Schedule. After taking effect this policy shall continue in force until the first renewal premium due date, subject to the grace period hereinafter provided. It may be continued for succeeding renewal terms by the payment of the renewal premium when due, and as filed with the insurance department wherever required.

RENEWAL CONDITIONS

The Company reserves the right to decline to renew this policy on any of the following grounds only:

A. After the Insured reaches his seventieth birthday.

B. If the Insured retires or ceases to be actively engaged in the duties of his profession or occupation, except by reason of disability covered under the terms of this policy.

C. If the Insured ceases to be an active member of the above named organization.

D. If the Company declines to renew all such policies issued to members of the above named organization, upon giving at least sixty days written notice of such declination prior to the renewal date of the policies.

Petitioner treated the amount received under the February 21, 1957,

contract ($14,603.45) as long-term capital gain.[1] Respondent determined said sum was taxable as ordinary income.

OPINION.

The issue presented is whether the $14,603.45 paid to Turner under the contract of February 21, 1957, is ordinary income or capital gain.

Respondent argues the entire amount received under the said contract is taxable as ordinary income on the ground that it was nothing more than the sale of naked rights to future income within the doctrine of *Commissioner* v. *P. G. Lake, Inc.*, 356 U.S. 260, and similar cases. Petitioner argues the transaction of February 21, 1957, really amounted to the sale of an interest in an insurance agency business, which was a capital asset and thus the gain realized was capital gain.

It seems clear that all the contract transferred was a one-half interest in earned commissions. Turner had the right to receive the commissions on policies that were automatically renewable. Such commission income would have been ordinary income to him. The money he received under the contract of sale was merely a substitute for a portion of commission income which he would have received without any further work in connection with the subject policies. The principle is not essentially different from an assignment of salary due the assignor for work performed. Whether it be salary or commissions due the assignor, he realizes ordinary income when he assigns his right to payment. *Helvering* v. *Horst*, 311 U.S. 112; *Helvering* v. *Eubank*, 311 U.S. 122; and *Estate of Thomas F. Remington*, 9 T.C. 99.

It is true the exact amount of commissions petitioner would receive could not be foretold. But that fact is immaterial. It is the subject matter of the contract that controls. Whether the yield to the transferee be large or small, the fact remains. The transferor has, by the payment received, realized the fruits of his investment or labor.

*George J. Aitken*, 35 T.C. 227, cited by petitioner, is factually distinguishable. There the sale of a fire and casualty insurance business was held to be a sale of a capital asset. But the sale of earned commissions was not involved. Actually the subject of the sale was what is known in the insurance business as "expirations." New policies had to be written by the purchaser of the business before he would receive any commission income.

Petitioner argues he in fact sold a portion of an insurance agency contract. A short answer to this argument is that the contract of February 21, 1957, cannot be construed as a sale of an agency or interest in an agency. All it did was transfer the right to receive

---

[1] Actually petitioner lumped the gain on the sale of the commission rights with another transaction involving the sale of a fractional interest in a share of stock. Respondent admits the sale of the stock interest resulted in capital gain..

one-half of the commissions petitioner was to receive on premiums to be paid on 522 different health and accident policies. But petitioner testified with respect to rights he had been granted by certain professional groups authorizing him to solicit the members of such groups for insurance. Petitioner's argument seems to be that he gave Shepard a right to solicit these group members. But the record shows Shepard was already soliciting the professional groups before the contract of February 21, 1957.

On the basis of the entire record we conclude the $14,603.45 was received from the sale of rights to receive insurance commissions and that petitioner realized ordinary income in such sale transaction.

*Decision will be entered under Rule 50.*