*Decisions will be entered under Rule 50.*

HUGH H. HODGES AND OTTIE F. HODGES, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1669-66, 1670-66, 1681-66, 1682-66.   Filed June 4, 1968.

*William B. Matthews*, for the petitioners.
*Robert G. Faircloth*, for the respondent.

---

[1] Proceedings of the following petitioners are considered herewith: Glenn L. Wells and Dorothy M. Wells, docket No. 1670-66; Wilmer Parker, Jr., and Annie Laura R. Parker, docket No. 1681-66; and Leslie E. Wells and Nena M. Wells, docket No. 1682-66.

SCOTT, *Judge:* Respondent determined deficiencies in the income taxes of the petitioners in the above-entitled cases for the years and in the amounts as follows:

| Docket No. | Petitioners | Taxable year | Deficiency |
|---|---|---|---|
| 1669-66 | Hugh H. Hodges and Ottie F. Hodges | 1962 | $486.95 |
| | | 1963 | 350.06 |
| 1670-66 | Glenn L. Wells and Dorothy M. Wells | 1962 | 868.12 |
| | | 1963 | 310.43 |
| 1681-66 | Wilmer Parker, Jr., and Annie Laura R. Parker | 1962 | 831.96 |
| 1682-66 | Leslie E. Wells and Nena M. Wells | 1962 | 872.77 |
| | | 1963 | 270.84 |

The issues for decision are:

(1) Whether a portion of the payment received in each of the years 1962 and 1963 by Hugh H. and Ottie F. Hodges as proceeds from the sale of the Hodges Insurance Agency in the year 1961 represents an amount received from the sale of rights to renewal commissions under 5-year insurance policies in force at the date of the sale and as such is taxable to petitioners as ordinary income.

(2) Whether the Hodges-Wells Agency, Inc., a subchapter S corporation, is entitled to deductions in the amounts of $7,739.91 and $4,461, or any portion thereof, for its fiscal years ended September 30, 1962, and September 30, 1963, respectively, as amortization, depreciation, or loss with respect to the partnership assets of Hodges Insurance Agency which it purchased in 1961 from Hugh H. and Ottie F. Hodges.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioners Hugh H. and Ottie F. Hodges, husband and wife who resided at the time of the filing of their petition in Ozark, Ala., filed their joint Federal income tax returns for the calendar years 1962 and 1963 with the district director of internal revenue at Birmingham, Ala.

Petitioners Glenn L. and Dorothy M. Wells, husband and wife who resided at the time of the filing of their petition in Ozark, Ala., filed their joint Federal income tax returns for the calendar years 1962 and 1963 with the district director of internal revenue at Birmingham, Ala.

Petitioners Wilmer Parker, Jr., and Annie Laura R. Parker, husband and wife who resided in Ozark, Ala., at the time of the filing of their petition, filed their joint Federal income tax return for the calendar year 1962 with the district director of internal revenue at Birmingham, Ala.

Petitioners Leslie E. and Nena M. Wells, husband and wife who resided at the time of the filing of their petition in Ozark, Ala.,

filed their joint Federal income tax returns for the calendar years 1962 and 1963 with the district director of internal revenue at Birmingham, Ala.

From 1932 until October 1961, Hugh H. and Ottie F. Hodges owned and operated as partners the Hodges Insurance Agency located in Ozark, Ala. On October 1, 1961, the Hodges sold the assets of their partnership, Hodges Insurance Agency, to Glenn L. Wells, Leslie E. Wells, and Wilmer Parker, Jr., all of Ozark, Ala. No written contract of sale was entered into by the parties. The total consideration for the sale of the partnership assets was $54,000. This price was arrived at by the parties by taking the yearly average of the gross commissions of the Hodges Insurance Agency over a 4-year period and multiplying the result by 3. The precise yearly average as computed was $18,387 but the sales price was rounded to $54,000.

The purchasers gave to the sellers a non-interest-bearing promissory note in the amount of $54,000 due and payable at the monthly rate of $450 beginning January 1, 1962, and for consecutive months thereafter for a period of 10 years.

The Hodges Insurance Agency was a family partnership composed of Hugh H. Hodges and Ottie F. Hodges and was engaged in selling, writing, and servicing fire, casualty, and indemnity insurance policies as an agency for various insurance companies. Hugh H. Hodges was a full-time employee of the Bank of Ozark in Ozark, Ala. He had been such a full-time employee of the Bank of Ozark for approximately 30 years prior to October 1, 1961. Hodges rented a room on the floor above the floor on which the public offices of the Bank of Ozark were located. He kept his insurance business files in this room and had workspace available there. This office was not open to the public. Hodges as an officer of the bank had an office in the downstairs portion of the bank building and operated his insurance business from that office. Two of the bank's employees assisted him in the operation of his insurance business. One of the bank employees who assisted Hodges was a stenographer who would type the policies for him after she concluded her working hours at the bank. The other employee who assisted Hodges was an assistant cashier at the bank and he kept the books of the insurance business for Hodges. If a policyholder came into the bank to pay Hodges a premium on an insurance policy and Hodges was not available, any teller in the bank would usually take the payment and deposit it to the account of the Hodges Insurance Agency, which was carried in the Bank of Ozark.

Hodges did not advertise and the business of the Hodges Insurance Agency was obtained primarily on a personal basis through Hodges' contacts with customers of the bank. Hodges saw most of the clients of the Hodges Insurance Agency on a regular basis every day or two

or every week as they came into the Bank of Ozark and in that way he kept up with his clients.

Each of the insurance companies represented by Hodges Insurance Agency had agreed with that partnership as to the amount of the commissions to be paid to the partnership and the type of insurance to be sold by it. Generally, commissions were 25 percent of premium income but on certain policies such as those covering business properties as distinguished from residential properties the commission would be only 20 percent of the premiums. The various insurance companies for which Hodges Insurance Agency sold insurance policies had agreed with the partnership on a procedure in the event of the termination of the partnership's business. In accordance with this agreement, it was understood that the agency's records and use and control of expirations would remain the property of Hodges Insurance Agency upon a sale of the partnership business.

Many of the insurance policies written by the Hodges Insurance Agency, including all the automobile insurance policies, were for a period of 1 year. However, some of the insurance policies other than automobile insurance were for a term of 5 years. Under the 5-year-type policy, the insured would pay the first year's premium at the time the policy was issued and on or about each renewal date Hodges Insurance Agency would bill the insured for the renewal premium. The regular 5-year policy would have an agreed first-year premium and an agreed renewal premium for each of the 4 succeeding years which was usually 88 percent of the first-year premium.

Hodges Insurance Agency also wrote policies which were written for a period of 1 year with an endorsement attached providing for their renewal for the following 4 successive years at 88 percent of the then current premium rate.

Upon receipt of the first year's premium paid on a 5-year policy, the agent would withhold the commission from that premium and remit the difference to the insurance company. The agent's commission on renewal premiums collected in the succeeding years was withheld and taken into account during the year in which the collection of the premium was made.

The total amount of renewal commissions applicable to 5-year-type fire and casualty policies in force with the Hodges Insurance Agency as of the date of the sale on October 1, 1961, was $12,444.48. The right to the commissions on the renewal premiums on 5-year policies, if and when the renewal premiums were paid, was part of the assets of the Hodges Insurance Agency which were sold by Hodges to the Wellses and Wilmer Park, Jr., on October 1, 1961. The assets sold also included office furniture and equipment of a value of $500, miscellaneous records consisting of daily reports, which daily reports are sometimes referred

to as "expirations," records with respect to expired insurance policies previously written but not in force at the date of sale, and records of the unexpired policies which were in force at the time of the sale.

In addition to the 1-year policies and the two types of 5-year policies heretofore described there were at the date of sale unexpired 3-year prepaid policies covering fire insurance and other casualty insurance. The 3-year prepaid policies were policies on which the entire premium had been paid at the date the policy was written usually at a rate of 2.76 times the annual premium rate. On these policies which were in force at the date of sale the premium had already been collected in full and the full commission withheld from the premium. It was understood by the parties at the date of sale that the purchasers would have the right to use the name Hodges for continuity of the business after the sale. Although there was no agreement on the part of Hodges not to compete, the parties to the transaction had been talking in prior years about a possible sale by Hodges of the Hodges Insurance Agency and the parties understood that Hodges who was 70 years old at the time of the sale would not compete with them since he planned on going out of the insurance business completely. The parties also understood that the entire business of the Hodges Insurance Agency was being sold and that the purchasers would service all policies in effect at the time of the sale including issuing of premium-due notices on the 5-year policies and doing any necessary handling of claims. The purchasers hoped to keep all or most of the persons issued policies written by the Hodges Insurance Agency prior to the sale of its business as their customers for an indefinite period.

On October 1, 1961, the Hodges-Wells Agency, Inc., an Alabama corporation, was organized under the laws of that State. It had an authorized capital stock of $1,200 consisting of 120 shares of $10 par value common stock. Twenty of the 120 shares were issued to Glenn L. Wells, 20 to Dorothy M. Wells, 40 to Annie Laura Parker, and 40 to Leslie E. Wells. Immediately after Glenn L. Wells, Leslie E. Wells and Wilmer Parker, Jr., purchased the assets of the Hodges Insurance Agency they transferred those assets to the newly formed Hodges-Wells Agency, Inc. The books and records of that corporation reflect the acquisition of the assets as of October 1, 1961, for $54,000.

Hodges-Wells Agency, Inc., qualified as a small business corporation under the applicable Internal Revenue laws with respect to the taxable years ended September 30, 1962, and September 30, 1963. Timely elections were made in that regard and the parties agree that the corporation should be treated for Federal income tax purposes during its fiscal years 1962 and 1963 as a partnership. In its income tax returns for its fiscal years ended September 30, 1962, and September 30, 1963, Hodges-Wells Agency, Inc., deducted the amounts of $7,739.91 and $4,461, re-

spectively, as depreciation of "contract or purchased franchise of records and renewal rights." In the depreciation schedule attached to the return the cost basis of the contract or purchased franchise of records and renewal rights was shown as $53,500 and a schedule showing the computation of the depreciation claimed was attached. The attached schedule contained a computation which listed each insurance policy in effect at the date of purchase by Hodges-Wells Agency, Inc., of the business of Hodges Insurance Agency, the gross premium with respect to such policy and an allocation of the purchase price of $53,500 to each policy computed by determining the percentage of the gross premium allocable to that policy to the total gross premiums on all policies in effect at the date of the purchase and applying such percentage to $53,500. The total amount of the purchase price allocated in the computation to policies on which renewal rights were not exercised in the fiscal year 1962 was the amount of the deduction for depreciation with respect to "contract or purchased franchise of records and renewal rights" claimed in that year and a similarly computed amount for the fiscal year 1963 was the amount of the similar depreciation deduction claimed in 1963.

Hugh H. and Ottie F. Hodges in their Federal income tax returns for the calendar years 1962 and 1963 reported the sale of the Hodges Insurance Agency on an installment basis showing the gross sales price as $54,000, the cost or other basis at $4,000 and the gain at $50,000. They computed a gain percentage of 0.9259. For each of the years 1962 and 1963 they showed receipts of $5,400, which they multiplied by the 0.9259 computed gain percentage to arrive at a $5,000 gain, which they reported as long-term capital gain in each of the years.

Respondent in his notice of deficiency to Hugh H. and Ottie F. Hodges increased their reported taxable income for each of the years 1962 and 1963 by the amount of $1,755.66 with the explanation as to each year that to this extent the payments totaling $5,400 received from the sale of the Hodges Insurance Agency constituted ordinary income which was computed as follows:

| | |
|---|---:|
| Unreported earned commissions (ordinary income) | $17,556.56 |
| Other property (no basis) capital gain | 36,443.44 |
| Total profit (installment sale) | 54,000.00 |
| Ordinary income percentage | |
| 17,556.56/54,000.00 = | 32.51214% |
| Capital gain percentage | |
| 36,443.44/54,000.00 = | 67.48786% |
| Payments received during taxable year ended | |
| December 31, 1962 | $5,400.00 |
| Ordinary taxable income | |
| $5,400.00 × 32.51214 percent = | 1,755.66 |

Respondent in his deficiency notice also decreased the long-term capital gain reported by petitioners from the sale of the Hodges Insurance Agency to $3,644.34 in each of the years 1962 and 1963, which amount was arrived at by multiplying 67.48786 percent by $54,000.

At the trial the parties agreed that the amount of unreported earned commissions of $17,556.56 shown in the notice of deficiency was in error and later stipulated that the amount of $12,444.48 was "the total amount of renewable commissions applicable to 5-year type fire and casualty policies in force with the Hodges Insurance Agency as of the date of sale on October 1, 1961."

Although respondent does not specifically so state, we interpret certain statements in his brief to be a concession that in determining the amount of ordinary income under his theory of the case, the figure of $12,444.48 should be used in lieu of the figures of $17,556.56 to determine the percentage of the receipts in each year which represented ordinary income to Hodges and that $500 of the sales price should be allocated to the sale of the office furniture and equipment.

Respondent in his notice of deficiency to Glenn L. and Dorothy M. Wells and in his notice to Leslie E. and Nena Wells, increased their income reported from the Hodges-Wells Agency, Inc., in each of the years 1962 and 1963 because of having increased the income of the corporation in each of those years by disallowing the amount of $7,739.91 for the fiscal year of the corporation ended September 30, 1962, and the amount of $4,461 for the fiscal year of the corporation ended September 30, 1963, claimed by the corporation as depreciation with respect to the assets other than the office furniture and equipment which had been purchased from Hodges.

Respondent in his notice of deficiency to Wilmer Parker, Jr., and Annie Laura R. Parker, for the calendar year 1962 increased their income from the Hodges-Wells Agency, Inc., because of an increase in the income of that corporation resulting from a disallowance of the claimed depreciation deduction of $7,739.91 to the corporation for the fiscal year ended September 30, 1962.

In his brief respondent recognizes that if his position that a part of the sales price which Hodges received for the assets of Hodges Insurance Agency should be allocated to "earned commissions" is sustained, the Wells-Hodges Agency, Inc., should be entitled to amortize that portion of the price paid for the assets of the Hodges Insurance Agency over the years during which it would receive commissions on renewal premiums with respect to 5-year policies in effect at the date of the sale.

OPINION

Respondent takes the position that $12,444.48 of the price received by Hodges upon the sale of his insurance business, is allocable to the

renewal commissions on 5-year fire and casualty policies [2] which were in effect at the date of the sale of the business.

Respondent contends that the sale by Hodges of the right to renewal commissions on outstanding 5-year policies was a transfer of anticipated income, and therefore, the amount received from such sale represents ordinary income to Hodges and not capital gain.

Respondent's position raises two problems. The first is whether an amount received from the sale of the right to commissions on renewal premiums due on 5-year fire and casualty insurance policies of the type involved in the instant case results in ordinary income as distinguished from capital gain. If we conclude that respondent is correct in his position that the sale of the right to commissions on such renewal premiums results in ordinary income to the seller, it will then be necessary to determine whether respondent is correct that the total amount of the renewal commissions attributable to the 5-year-type fire and casualty policies in force as of the date of the sale on October 1, 1961, should be held to be the portion of the sale price attributable to the purchase of the right to the commissions on the renewal premiums.

Generally, cases involving the assignment by a taxpayer of income which he anticipates receiving over a period of years indicate that the payment for the anticipated income is an amount less than the total anticipated income. As we will later discuss, the facts here tend to indicate that if part of the amount paid by the purchasers for the business of the Hodges Insurance Agency is to be allocated to the purchase of the right to commissions on the renewal premiums on 5-year policies, the amount so allocated should be less than the total amount of commissions on such renewal premiums which would be

---

[2] Respondent in his notice of deficiency determined that $17,556.56 of the $54,000 was allocable to renewal commissions. This was based on respondent's determination that there were sufficient renewal premiums due on the 5-year fire and casualty policies as of the date of the sale of the business on Oct. 1, 1961, to result in commissions over the succeeding years in the amount of $17,556.56. At the trial it developed that the $17,556.56 figure for commissions to be received on the renewal premiums on the 5-year policies was in error and subsequent to the trial the parties stipulated that the amount of such renewal commissions was $12,444.48. Respondent in his brief states that he contends "that $12,444.48 of the purchase price of $54,000 is attributable to the anticipated renewal commissions under the said five-year policies." Therefore, we interpret respondent's brief as conceding that his determination to the extent that it allocated more than $12,444.48 to renewal commissions on the 5-year policies was in error. Also, it developed at the trial that $500 of the $54,000 was allocated by the parties to the sale to office furniture and equipment. Since respondent requests a finding that among the assets transferred by Hodges in the sale of the Hodges Insurance Agency were "office furniture and equipment with a value of $500.00," we assume that he does not question this $500 allocation and recognizes, as do petitioners, that only $53,500 of the amount paid to Hodges on the sale of the Hodges Insurance Agency was paid for all assets other than office furniture and equipment.

received subsequent to the sale if all renewal premiums on all policies were paid when due.[3]

This Court and other courts have considered a number of cases involving whether the sale of a right to receive commissions paid on renewal premiums on life, health, and accident policies resulted in ordinary income or capital gain to the seller. In *Floyd L. Turner*, 38 T.C. 304 (1962), we held that proceeds from the sale of a taxpayer's right to receive future commissions with respect to premiums paid on health and accident insurance policies which were automatically renewable resulted in ordinary income to the seller. We pointed out that the taxpayer had the right to receive the commissions on policies that were automatically renewable and that such commission income, had the taxpayer received it, would have been ordinary income to him. We concluded that the money the taxpayer in the *Floyd L. Turner* case received under the contract of sale of his right to receive a portion of the commission income from premiums paid on automatically renewable accident and health insurance policies was merely a substitute for a portion of the commission income he would have received without any further work in connection with the policies and that the situation was not essentially different from assignment of salary due to the assignor for work he had performed.

A number of cases have dealt with the assignment by a life insurance agent of his right to commissions upon renewal premiums to be paid in the future. Some of these cases involved a sale by the agent of his right to such commissions and others have involved the question of income with respect to a decedent being received by an estate or a person who obtained the right to such commissions upon the death of the agent who had sold the life insurance. These cases have uniformly recognized that when an assignment of the right to receive renewal commissions is made by an agent, the amount received for making the assignment is taxable as ordinary income to him and that the amount of commissions on renewal premiums received by the estate or heir of a decedent is income with respect to a decedent since such income was earned by the decedent prior to his death. See *Hel-*

---

[3] Respondent has disallowed to the Hodges-Wells Insurance Agency, Inc., all deductions for amortization or depreciation claimed with respect to the amounts paid to Hodges to purchase the business of the Hodges Insurance Agency, except depreciation claimed on the office furniture and equipment to which $500 of the purchase price was allocated. Respondent in his brief recognizes that if a portion of the purchase price is to be allocated to the purchase of the right to commissions on renewal premiums on 5-year policies, the purchaser is entitled to amortize the portion of the purchase price paid for the right to receive such commissions on renewal premiums over the years during which the purchaser expected to receive such commissions. The issue is not specifically discussed by petitioners in their discussions of the Wells and Parker cases to which it relates but petitioners' general contentions are broad enough to encompass this issue. Respondent does not contend that the issue is not properly before us in the Wells cases and the Parker case.

*vering* v. *Eubank*, 311 U.S. 122 (1940), and *Frances E. Latendresse*, 26 T.C. 318 (1956) affd. 243 F. 2d 577 (C.A. 7, 1957) certiorari denied 355 U.S. 830. Likewise, there have been cases holding that amounts received by a taxpayer upon the sale of a management contract with a mutual insurance company resulted in ordinary income to the seller. The payment received for the sale was considered to represent the present cash value of what otherwise would have been ordinary income received during the remaining life of the management contract. *United States* v. *Eidson*, 310 F. 2d 111 (C.A. 5, 1962), and *United States* v. *Woolsey*, 326 F. 2d 287 (C.A. 5, 1963).

While the cases involving the right to receive commissions on renewal premiums paid with respect to life insurance and health and accident insurance do not discuss whether there is any necessary action to be taken by the purchaser such as the mailing of a statement showing the date the premium is due, the cases involving the sale of management contracts do discuss this problem. It was pointed out in *United States* v. *Eidson, supra,* that in order to receive the income from the management contract, the sellers would have had to manage the affairs of the insurance company in such a manner as to produce profit. The court, however, concluded that this fact did not affect the nature of the income received but only the amount which a purchaser might be willing to pay for the contract.

In the instant case, Hodges contends that it was necessary for the purchaser of the Hodges Insurance Agency to send out the premium notices with respect to the 5-year policies and that for this reason the commissions on the renewal premiums were not automatically due as they were on health and accident policies and life insurance policies.

We do not consider the fact that the Hodges-Wells Insurance Agency, Inc., as purchaser of the business of the Hodges Insurance Agency would have to mail out notices that renewal premiums were due in order to obtain payment of the premiums and the right to the commission to be a valid distinction between the instant case and the cases involving renewal commissions with respect to health and accident and life insurance policies. The amount of servicing of the 5-year policies involved in this case did not involve as much such work as that required of a manager of a mutual insurance company to produce income under his management contract.

Hodges takes the position that there should be no distinction made in this case between the sale of his right to commissions on renewal premiums on the 5-year policies and the sale of "insurance expirations" with respect to the automobile policies and the 1-year fire and casualty policies. He calls attention to the fact that numerous cases hold that such insurance expirations are capital assets and that the

amount received upon the sale of such expirations is capital gain. *George J. Aitken*, 35 T.C. 227 (1960), and *Commissioner* v. *Killian*, 314 F. 2d 852 (C.A. 5, 1963), affirming a Memorandum Opinion of this Court.

The court, in discussing the nature of the insurance business sold in *Commissioner* v. *Killian, supra*, stated that the reality of the transaction was that Killian sold information concerning fire and casualty policies written by him over a period of many years and that such information had an intrinsic economic value in the nature of goodwill. The court further pointed out that it should be particularly noted that Killian had already received all of the commissions due him under the policies covered by the informational data and had reported such commissions in his tax return. The court then stated (314 F. 2d at 855):

This is quite distinct from the sale of anticipated renewals from, for example, life insurance policies which pay commissions after the first year without being rewritten in a new policy. There was no service fee or other definitive accrual right here. The Tax Court was correct in its determination that the payment to Killian under these facts was not a lump sum consideration essentially a substitute for what would otherwise be regarded at a future time as ordinary income. See Commissioner of Internal Revenue, et al. v. P. G. Lake, Inc., et al., 356 U.S. 260, 78 S. Ct. 691, 2 L. Ed. 2d 743. There was nothing here which was automatic, perfunctory or legally enforceable coming to Ryan and Fry which could be equated with Killian's future income. Neither they nor Killian could do more than project, prospectively, the value of Killian's relationship with the policy holders identified on the informational data.

While the court in *Commissioner* v. *Killian, supra*, referred specifically to a renewal commission, it merely noted life insurance policies as an example of the type of policies producing such commission. Petitioners contend, however, that the difference in the nature of casualty insurance and life insurance requires that the treatment of income from the sale of commissions on renewal premiums with respect to casualty policies be treated differently from income from the sale of renewal commissions with respect to life insurance policies. They direct attention to the statement in *Larry D. Hibler*, 46 T.C. 663, 669 (1966), affirmed per curiam 383 F. 2d 989 (C.A. 5, 1967), that

Since policies of fire, casualty, and fidelity insurance, unlike life insurance, are not automatically renewed, and since Walker withdrew from active participation as an insurance agent at the date of sale, the petitioner became solely responsible for operating the business and generating income from renewals. It was he who had the control and benefits of ownership in the expiration lists. It was he who had to resell the insurance to former customers of Walker when the policies expired before there were any commissions. In terms of both labor expended and property owned, it was he who earned *all* the commission income.

The evidence here shows that the expiring policies of fire and casualty insurance involved in the instant case were not automatically

renewed and that it was necessary for the purchasers to keep in touch with the insured and do the other necessary work to sell a policy for a succeeding year or years. By its efforts the purchasers earn the commissions with respect to the premiums on policies which were written for succeeding years when they expired.

Respondent does not contend otherwise. It is respondent's position that where a 5-year policy has been sold with no further sale being necessary for the premium for the remaining years on the policy to be payable and commissions thereon due, the situation more nearly resembles commissions on renewal premiums of life, health, and accident insurance policies which are automatically renewable than commissions on sales for succeeding years of a casualty insurance policy to an insured whose policy is expiring. As respondent points out, each 5-year policy covers a term and requires no resale or renewal in order for the commissions on premiums for the balance of the term to be due. Certainly the evidence supports respondent with respect to the ordinary 5-year-type policy which the evidence shows provided for a term of 5 years covering the fire or other casualty for which written with an initial premium and a premium for each of the remaining 4 years of 88 percent of the initial premium. Such insurance would appear to be more comparable to 5-year term life insurance than to ordinary 1-year fire or casualty policies.

We conclude that the portion of the price paid to Hodges for the sale of the commissions on the renewal premiums to be paid with respect to 5-year policies which had been sold by the Hodges Insurance Agency prior to the date of sale of that business to the Wellses and Parker constituted ordinary income to Hodges.

Some of the so-called 5-year policies were actually 1-year policies with renewal rights for 4 additional years. The evidence does not show how many such policies are involved in this case and the parties have not treated these policies as distinguishable from the policies for a 5-year period. For that reason we have no basis to separate out the 1-year policies with renewal rights for 4 succeeding years, if we were to conclude that some different treatment would be necessary with respect to the sale of the right to commissions on renewal premiums on such policies. Apparently the policy with an endorsement providing for renewal rights was a minor portion of the policies referred to as 5-year policies and neither party is seeking any separate consideration with respect to such policies. We therefore do not deem there to be an issue with respect to these policies as distinct from other 5-year policies.

Even though we agree with the respondent that the portion of the amount received by Hodges in each year here in issue from the sale of the Hodges Insurance Agency which is properly allocable to the sale

of the commissions on the renewal premiums on 5-year policies constitutes ordinary income to Hodges, we do not agree that the amount of the purchase price to be allocated to the sale of the commissions on the renewal premiums is the full $12,444.48 of such anticipated commissions over the 4-year period following the date of the sale.

The evidence shows that 4 years from October 1, 1961, would be the limit of the period over which such commissions would be paid since the policies had an initial year and 4 succeeding years. It is readily apparent that the final date on which any such commissions might be received would be September 30, 1965. The inference from the evidence with respect to these 5-year policies is that some of the commissions may not be received because of the renewal premiums not being paid for some reason such as a sale of the property covered by the insurance to a person who wanted other insurance on the property. We therefore do not consider it reasonable to assume that $12,444.48 of the $54,000 total price paid for the Hodges Insurance Agency business and office furniture and equipment should be allocated to the sale of the commissions on renewal premiums on 5-year policies. The evidence here shows that the $54,000 price was arrived at on the basis of three times an average premium for the 4 years prior to the date of the sale and after the total amount was so arrived at, the figure was rounded off to $54,000. The $12,444.48 of commissions on renewal premiums is, of course, figured prospectively and would not be precisely comparable to the total premiums used to obtain the average premiums on which to base the sales price of the business. Whatever portion of the $12,444.48 which is received by the purchaser will be received over the 4 years following October 1, 1961. We, therefore, consider that a reasonable estimate of the amount of the total sales price allocable to the commission on the renewal premiums on the 5-year policies may be arrived at by allocating to such policies three times the average yearly premium income on such policies over a 4-year period (one-fourth of $12,444.48 is $3,111.12) and rounding such figure off to an even sum as the parties did in determining the price to be paid for the Hodges Insurance Agency.

On this basis we arrive at $9,000 as representing the portion of the $54,000 total sales price which was paid to Hodges for the sale of the right of Hodges Insurance Agency to commissions on renewal premiums on 5-year policies.

Respondent's method of computing the amount of the sale price received which represented ordinary income to Hodges is not questioned by petitioners aside from their contention that no such amount represented ordinary income. For that reason we will not consider whether respondent's method is the proper or best one since apparently petitioners are willing to accept respondent's method except for the

figure for the amount of the purchase price paid for the commissions on renewal premiums if we approve respondent's theory. Having approved respondent's theory, we will accept the method which both parties accept for the computation of the amount received by Hodges which represents ordinary income with the adjustments that the portion of the purchase price assigned to the sale of the commissions on the renewal premiums shall be $9,000 instead of the $17,556.56 used by respondent. We do not deem it necessary for us to consider or determine whether this method of computation is the most appropriate method since the parties do not raise an issue with respect to the method of computation.

Our next issue concerns whether Hodges-Wells Agency, Inc., is entitled to any deduction with respect to the $53,500 paid for the assets of Hodges Insurance Agency other than the $500 attributable to the office furniture and equipment. It has been recognized in numerous cases that where a taxpayer purchases insurance renewal commissions, such taxpayer is entitled to recover the cost of such commissions in determining the income he receives from such commissions. See *H. B. Hill*, 3 B.T.A. 761 (1926) ; *Lewis N. Cotlow*, 22 T.C. 1019 (1954), afd. 228 F. 2d 186 (C.A. 2, 1955) ; and *Frances E. Latendresse, supra*.

In each of these cases the renewal commissions which had been purchased were to be received over a stated period of years. The question was the manner of proration of the purchase price over the period of time during which commissions would be received, recognizing that a higher percentage of the commissions would be received in the first part of the period than in the later part, since in each year certain policies on which commissions on renewal premiums were being received would expire or be discontinued.

The parties in the instant case have not discussed the question of a proper allocation to the 2 years here in issue of the portion of the purchase price of the Hodges Insurance Agency which represented the purchase price of commissions on renewal premiums. However, as we pointed out in *Frances E. Latendresse, supra*, the fact that the record does not permit a computation with mathematical accuracy of the portion of the cost of insurance renewal commissions which should be allocated to each year is no justification for denying any amortization deduction of such costs. In *Frances E. Latendresse, supra*, we stated that to allow no amortization under such circumstances would be the one completely wrong conclusion. We then proceeded to make an allocation as best we could on the basis of the facts shown in the record.

The facts in this record show that Hodges had been in the insurance business for 30 years prior to the date he sold the Hodges Insurance Agency to the Wellses and Parker. The evidence also shows that his

clientele was relatively steady, generally speaking being customers of the bank. On these facts, we think it reasonable to assume that during the 5 years preceding Ocober 1, 1961, the sales of 5-year policies had been relatively even throughout the years. Since Hodges-Wells Agency, Inc., had a fiscal year ending September 30, we consider that to view the total cost to be recoverable over its years ending in 1962 through 1965 is reasonable. From these assumptions it follows that in its fiscal year ending September 30, 1962, commissions on renewal premiums would be received with respect to all 5-year policies still outstanding at the date of the sale in 1961 which had not been canceled for some reason other than expiration of their terms. In its fiscal year 1963 such commissions would be received with respect to three-fourths of such policies; in its fiscal year 1964, with respect to one-half; and in its fiscal year 1965 with respect to one-fourth. On this basis we consider a fair allocation of the $9,000 portion of the purchase price of the Hodges Insurance Agency paid by Hodges-Wells Agency, Inc., for commissions on renewal premiums on 5-year policies to be $3,700 for the fiscal year ending September 30, 1962, and $2,500 for the fiscal year ending September 30, 1963. Such an allocation leaves $2,800 of the $9,000 payment allocated to commissions on renewal premiums unrecovered at the end of the fiscal year 1963, which falls in the last year we have before us with respect to the individual petitioners. We hold that Hodges-Wells Agency, Inc., is entitled to deductions for amortization of the cost of commissions on renewal premiums of $3,700 and $2,500 for its fiscal years 1962 and 1963, respectively.

The final issue is whether Hodges-Wells Agency, Inc., is entitled to any deduction either as amortization or depreciation under section 167, I.R.C. 1954, or as a loss under section 165 with respect to the portion of the purchase price of the Hodges Insurance Agency paid for intangible assets other than commissions on renewal premiums. On its returns Hodges-Wells Agency, Inc., claimed this deduction as depreciation but on brief petitioners argue that they purchased from Hodges Insurance Agency intangible assets having no reasonably ascertainable useful life and therefore a loss occurs when a policy is not renewed. Petitioners in their brief state their contention as follows:

What did petitioners buy? It is apparent that all petitioners purchased was the office furniture valued at $500.00 and the dailies or expirations of the policies then in force of the value of $53,500.00. It is readily apparent that their capital investment may not be recovered by amortization or depreciation because these intangibles have no ascertainable useful life. It would have been arbitrary and unfair for petitioner to declare these "expirations" had a useful life of say 10 years and seek to deduct 10 percent of their cost each year. At the end of 10 years the bulk of the "expirations" would still be in force and generating income. However, the petitioners allocated to each expirations its pro rata value to the total purchase price and if any particular "expiration" was not renewed that por-

tion of the capital investment, and only that portion that was lost, was deducted as a capital loss.

Petitioners then proceeded to argue that the deductions which Hodges-Wells Agency, Inc., claimed on its return as depreciation are properly deductible as losses under section 165, I.R.C. 1954. As we pointed out in *Manhattan Co. of Virginia, Inc.*, 50 T.C. 78 (1968), the cases involving insurance expirations have not been uniform in their holdings with respect to whether such an intangible asset had a reasonably ascertainable useful life. See also *Alfred H. Thoms*, 50 T.C. 247 (1968). Since petitioners do not contend that the intangible assets purchased by Hodges-Wells Agency, Inc., from Hodges Insurance Agency did have a reasonably ascertainable useful life, we need not here discuss this problem. Suffice it to say that on the basis of the testimony in this record, particularly the testimony of an officer of Hodges-Wells Agency, Inc., that the corporation expected to be renewing insurance with respect to expirations purchased from Hodges Insurance Agency for an indefinite period of time, and that there was continuity value in the name, "Hodges," we agree that the intangible assets in the nature of dailies or expirations and goodwill purchased by Hodges-Wells Agency, Inc., from Hodges Insurance Agency had no reasonably ascertainable useful life.

Petitioners argue that the various expirations or dailies purchased from Hodges Insurance Agency should be considered as separate assets and a portion of the total purchase price allocated to each such asset. They argue that when a policy is not renewed, the portion of the total purchase price allocated to such policy is properly deductible as a loss.

We do not agree with petitioners that the evidence in this case shows that any portion of the purchase price for the expirations, goodwill, and other information contained in the records of Hodges Insurance Agency is allocable to any particular expiration or policy of insurance. There is nothing in the record to show that each policy had a value comparable to others or that a price for each policy is properly computable on the basis of the yearly premium of such policy. Certainly, some of the policies must have covered marginal risks and would have had little or no value to the purchaser of the "expirations." The officer of Hodges-Wells Agency, Inc., who testified in this case stressed the fact that a casualty insurance agent in effect guarantees to the extent of the yearly premium the credit of his clients. The "expiration" with respect to an insured who was a poor credit risk might be valueless. Because of the total absence of evidence regarding the nature of the various policies with respect to which expirations were purchased by Hodges-Wells Agency, Inc., from Hodges Insurance Agency, there is no basis in this record for holding that any portion of the purchase

price paid for the intangible assets consisting of the expirations, miscellaneous information files, and goodwill of Hodges Insurance Agency is allocable to any one policy. In a number of cases involving the purchase of information such as contained in insurance expirations or customers lists, we have held the assets which were purchased to constitute an indivisible asset and not a composite of various assets represented by the various names of persons insured or the various customers. See *Anchor Cleaning Service, Inc.,* 22 T.C. 1029 (1954), and *Richard M. Boe,* 35 T.C. 720, 725 (1961), affd. 307 F. 2d 339 (C.A. 9, 1962).

Petitioners call attention to the statement in *Thrifticheck Service Corporation* v. *Commissioner,* 287 F. 2d 1, 5 (C.A. 2, 1961), affirming 33 T.C. 1038 (1960), that, "Whether, under appropriate methods of allocation or accounting, a deduction might be taken upon cessation of relations with one or more of the banks in question, we do not decide." What might be a proper method of allocation or accounting to which the court was referring, petitioners do not suggest, except to say that the method they have used in the instant case is such a proper method. However, petitioners have used exactly the same method which the court refused to approve in *Boe* v. *Commissioner,* 307 F.2d 339 (C.A. 9, 1962), affirming 35 T.C. (1961). In that case the court stated the cost of any particular contract could not be determined and for that reason it was no help to the taxpayer that he might be able to show that a given number of contracts actually terminated in a particular year. In the case of *Boe* v. *Commissioner, supra,* the court also pointed out that there was no showing that the capital asset involved diminished in value each time there was a termination of a particular contract, nor even if such diminution could be assumed that the amount of such diminution had any relationship to the so-called cost allotted by the taxpayer to the contract.

The same is true here. It may well be that the insurance which was not renewed was insurance of a type so marginal that Hodges-Wells Agency, Inc., might consider it preferable not to have it renewed.

In the recent case of *Manhattan Co. of Virginia, Inc., supra,* we pointed out that the record there contained nothing to support a determination of the amount paid for each name on a customer list and also that there had been no showing that the name on the customer list did not have some continuing value even though the customer was lost. The same situation prevails here. There has been no showing justifying petitioners' allocation of the overall purchase price to the various policies. Also there has been no showing that there was not a continuing value to the knowledge of the type of insurance used by an individual even though that insurance was not renewed for a particular year.

We therefore conclude that except for the amortization of the $9,000 allocable as the purchase price of commissions on renewal premiums on 5-year policies, petitioners are not entitled to a deduction for amortization with respect to the $53,500 paid for assets other than furniture and equipment or entitled to a deduction for any loss computed on the basis of specific policies which are not renewed.

*Decisions will be entered under Rule 50.*