Joe A. and Helen Brown v. Commissioner.
Brown v. Commissioner
Docket No. 2106-69 SC.
United States Tax Court
T.C. Memo 1969-257; 1969 Tax Ct. Memo LEXIS 40; 28 T.C.M. (CCH) 1330; T.C.M. (RIA) 69257; December 2, 1969, Filed. Donald E. Dore, for the petitioners. Bruce A. McArdle, for the respondent. TANNENWALD
Memorandum Opinion TANNENWALD, Judge: Respondent determined a deficiency of $878.24 in petitioners' income tax for their taxable year 1967. The principal question before us is the proper treatment of certain payments received by petitioner Joe A. Brown upon termination of an insurance agency agreement. All of the facts have been stipulated and are found accordingly. Petitioners are husband and wife and had their legal residence in DeQuincy, Louisiana, at the time the petition herein was filed. They filed a joint Federal income tax return for *41 1967 with the director of the Internal Revenue Service Center in Austin, Texas. Petitioner Helen Brown is a party herein solely because of her joint and several tax liability with her husband. Petitioner Joe A. Brown shall hereinafter be referred to as Brown. On January 30, 1950, Brown entered into an agency agreement contract with Continental Casualty Company (hereinafter referred to as Continental) which provided in pertinent part: 1. The Agent is authorized to solicit applications for such policies of the Company as are issued only by its Railroad Division and to collect premiums on such policies as may be issued on other than a payorder basis pursuant to such applications. 2. The Agent may operate in such territory as he may from time to time be authorized by the Company but the Company may, regardless of this agreement, enter into agency contracts with other agencies operating in the same teritory. 3. Upon such premiums as may be remitted to and accepted by the Company for policies issued pursuant to applications secured hereunder, the Agent shall be allowed as full compensation the commissions specified in the following schedule. *90 SCHEDULE OF COMMISSIONS
On premiums collected on the payorder plan for accident, accident and health policies and individual policies providing indemnity only for expense of hospital, medical, surgical and nursing services issued on the payorder plan.
20%
On premiums collected and paid direct by the insured to the Company or Agent for such policies.
25%
On premiums collected on the payorder plan or by cash payments for policies of the family group type which provide for expenses of hospital, medical, surgical and nursing service.
5%
On premiums collected on the payorder plan or by cash payments for policies or certificates which provide for life insurance benefits.
10%
*42 * * * 6. It is expressly agreed and understood that all cash premiums collected by the Agent are the property of the Company and while held by him are trust funds; that all such collections received by the Agent shall be turned over and paid to the Company in full as herein 1331 provided; that the Agent has no interest, ownership or proprietary control therein and shall make no deductions therefrom before paying the same over to the Company. * * * 13. Nothing contained herein shall be construed to create the relation of employer and employe [sic] between the Company and the agent. The Agent shall, subject to the provisions of Paragraphs 10 and 11, be free to regulate his own time and exercise his own judgment as to the persons from whom he will solicit insurance and the time and place of solicitation and otherwise adopt such lawful means as he may select for the purpose of conducting the business of his agency, but the Company may from time to time prescribe the conditions, rules and regulations under which applications for insurance shall be accepted (not interfering with such freedom of action of Agent mentioned herein) which conditions, rules and regulations shall be observed *43 and conformed to by the Agent. 14. This agreement may be terminated at any time by mutual written agreement of the parties hereto or by either party giving to the other written notice stating when, not less than five days, thereafter such termination shall be effective; provided, however, if within such five days the party receiving notice of cancellation shall make written demand therefor, the termination date of the agreement shall be extended for a further period of twenty-five days and the agreement shall then terminate as of the twenty-fifth day following the date set in the original cancellation notice. This agreement may, at the option of the Company, be automatically cancelled with or without written notice, (written notice being hereby waived by the Agent) in the event: A. The Agent dies; B. The removal of the Agent from the territory covered by him is required by the management of the Railroad comprising such territory; C. The Agent is unable to secure or retain the necessary license from proper authorities; D. The Agent makes an agency connection with a competing Company; E. The Agent fails to produce business for a period of sixty days without giving acceptable *44 notice or making satisfactory explanation during that period; F. The Agent is guilty of fraud or breach of any of the conditions or provisions of this contract; G. The Agent fails to pay over to the Company policy premiums collected by him or other amounts due the Company hereunder when requested. 15. In the event this agreement is terminated by mutual written consent or written notice or by reason of the circumstances specified in Sections A, B, or C in Paragraph 14 (but not by reason of the circumstances specified in Paragraph D.E.F or G), the interest of the Agent or his estate in policies originated by the Agent or otherwise credited to his account shall be disposed of in the following manner: A. The Agent or his estate shall not be entitled to any commissions until the Company has reimbursed itself for any charges or debts for which the Agent is liable to the Company, and such debt or debts shall be the first lien on such commissions; B. The interest of the Agent or his estate in policy premiums paid direct by the insured to the Company or Agent shall cease upon the effective termination date of this agreement; C. The interest of the Agent or his estate in payorder *45 business shall terminate upon the next succeeding expiration dates of term policies and the next succeeding anniversary dates of continuous payorder policies. In the event this agreement is terminated by reason of the circumstances specified in sections D, F or G in paragraph 14 the interest of the agent or his estate in this agreement shall immediately terminate and the Agent, for himself and his estate, hereby waives all claims for interest in any further commission thereunder. In the event this agreement is terminated by the Company by reason of the circumstances specified in Section E, in paragraph 14, the Company reserves the option of disposing of the interest of the Agent in policies originated by him or otherwise credited to his account according to the provisions of Section C in this paragraph, or by a cash settlement amounting to not less than six times the commissions earned in the month preceding the date of termination less any debit balance as shown by the commission statement for that month. On January 12, 1967, Continental terminated the above agreement under the provisions of subparagraph E of paragraph 14. This termination completely severed the agency relationship *46 that had existed between Continental and Brown. On February 1, 1967, pursuant to paragraph 15 of the agreement, Continental paid Brown $7,169.18. Continental elected to calculate its amount by multiplying by ten the "commissions earned in the month preceding the date of 1332 termination less any debit balance." After such payment, there were no further amounts due under the agreement. Petitioners assert that they are entitled to long-term capital gain treatment of the excess of the $7,169.18 over a claimed cost basis of $548.04 in the agency agreement. We disagree. Initially, we note that there is no evidence whatsoever to support the claim of a cost basis. Conceivably, Brown may have made some expenditures under paragraphs 4 and 8 of the agreement (relating to license fees and indemnity bonds). But there has been no proof that he in fact did so nor have we been enlightened as to whether such expenditures, if made, were in the nature of capital outlays or deductible expenses of prior years. In the absence of any such proof, we are unable to apply the rule of Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). Accordingly, we hold that Brown had no recoverable element *47 of cost. With respect to the nature of Brown's gain, we think it clear that his rights under the agreement did not constitute a capital asset. For there to be a capital asset, there must be "property" within the meaning of section 1221. [1] But while Brown's contract rights may have been "property" in some sense, it does not follow that they were "property" for purposes of section 1221. Commissioner v. Gillette Motor Transport, Inc., 364 U.S. 130, 134 (1960). Petitioners have not shown that Brown had any interest in the insurance policies themselves. See Commissioner v. Ferrer, 304 F. 2d 125, 130-131 (C.A. 2, 1962), modifying 35 T.C. 617 (1961). Paragraph 6 of the agency contract recites that: It is expressly agreed and understood that all cash premiums collected by the Agent are the property of the Company * * * that the Agent has no interest, ownership or proprietary control therein. To be sure, under paragraph 15 of the agreement, the payment in question was made in settlement of "the interest of the Agent * * * in policies originated by the Agent or otherwise credited to his account." But, in the absence of any further evidence, we think *48 this language simply encompassed Brown's right to receive commissions on premiums to be paid in the future under policies originated by him in the past. A payment in discharge of such a right, unlinked to the policies themselves by any proprietary interest, is simply a substitute for ordinary income. Robert E. Foxe, 53 T.C. - (Oct. 8, 1969); Hugh H. Hodges, 50 T.C. 428 (1968); Hubert M. Luna, 42 T.C. 1067, 1079 (1964); Joseph W. Brown, 40 T.C. 861 (1963); Floyd L. Turner, 38 T.C. 304 (1962). Petitioners stress the fact that the payment was computed on past income rather than on the basis of a right to income in the future, citing Jones v. Corbyn, 186 F. 2d 450 (C.A. 10, 1950). That case involved the sale of an insurance agency contract and the accompanying business, both of which were held by the Court of Appeals to have had significant value in and of themselves. See 186 F. 2d at p. 452. It would appear, therefore, that petitioners are arguing that Brown sold a going business which had a separate element of value in the nature *49 of good will. One difficulty with this argument is that there is nothing in the record to support it. The other difficulty is that the current vitality of Jones v. Corbyn is questionable, if indeed it has not been overruled. Wiseman v. Halliburton Oil Well Cementing Company, 301 F. 2d 654 (C.A. 10, 1062); see Joseph W. Brown, supra, 40 T.C. at p. 867. Nor can petitioners claim the benefits of section 1241. [2] In the first place, the section, by its terms, only applies to a "distributor of goods." It, therefore, does not cover an agreement to sell intangible personal property or for the rendition of personal services, such as is involved herein. See section 1.1241-1(c), Income Tax Regs. Beyond this, as we have already pointed out, petitioners have not shown any capital investment, much less a "substantial capital investment" as required by the section. Finally, while section 1241 relaxes the requirement of a "sale or exchange," it does not determine 1333 the character of the gain, i.e., whether it is from the sale or exchange of a capital asset. See section 1.1241-1(a), Income Tax Regs.; S. Rept. *50 No. 1622, 83d Cong., 2d Sess., p. 445 (1954). Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩
2. SEC. 1241. CANCELLATION OF LEASE OR DISTRIBUTOR'S AGREEMENT. Amounts received by a lessee for the cancellation of a lease, or by a distributor of goods for the cancellation of a distributor's agreement (if the distributor has a substantial capital investment in the distributorship), shall be considered as amounts received in exchange for such lease or agreement.↩