**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**Maurice L. KILLIAN, Respondent.**

**No. 19386.**

United States Court of Appeals
Fifth Circuit.

March 14, 1963.

Louis F. Oberdorfer, Asst. Atty. Gen., John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, David O. Walters, Attys., Dept. of Justice, Washington, D. C., Crane C. Hauser, Chief Counsel, John M. Morawski, Atty., I. R. S., Washington, D. C., for petitioner.

Lucius A. Buck, Horace R. Drew, Jr., Jacksonville, Fla., Maurice L. Killian, Orlando, Fla., for respondent.

Before JONES and BELL, Circuit Judges and CARSWELL, District Judge.

CARSWELL, District Judge.

The sole issue for review here is whether $12,500 received by the taxpayer in connection with an agreement of sale and dissolution of a partnership engaged in the insurance business should be taxed as capital gain or as ordinary income.

Upon a full record, the Tax Court entered its findings and concluded that what was sold in this instance was a capital asset under Title 26 United States Code § 1221.

Although there is considerable tug-of-war between the parties here on the proper terminology to be placed on the facts and the resulting application of law, the facts themselves are rather singularly simple and entirely uncontradictory.

For many years Killian was engaged in the insurance business in Ohio. In 1947 he formed a partnership with two of his agents Ryan and Fry, under a contract which provided that Ryan and Fry pay him a stipulated sum each year for ten years. At the end of this period Ryan and Fry would own the partnership and Killian would withdraw. This same 1947 agreement also expressly provided, however, that Killian was not transferring to the partnership "any of his personal business," which specifically included "that business carried on the books of The M. L. Killian Agency as of the 1st day of January, 1948, wherein it is shown that Maurice L. Killian personally was the writing agent of said business. * * *"

Killian's personal business involved principally fire and casualty insurance with a small amount of accident and health insurance and some life insurance. He kept certain records which he called "dailies," and which were so viewed by the Tax Court, but which the Commissioner calls "expirations." Here we enter the eye of the storm and turn to the record itself, for it is the nature and attribute of these particular records as found by the Tax Court which determined the case for the taxpayer before that court. The record fully supports the finding of the Tax Court that:

" * * * This information consisted of such things as the beginning and expiration dates of the policy, the type of insurance and the coverage. The dailies were used to provide information for renewals and servicing the policies. In writing fire and casualty insurance, as contrasted with life insurance, the producing agent is normally paid a commission only when the policy is sold or when renewed."

In 1954, some four years before Killian's interest in the partnership was to end, he and his partners entered into an

agreement for the sale of this personal property. The 1954 agreement also provided for the sale by Killian of all of his "rights and interests in said partnership" for a total aggregate sum of $36,500, it being understood and agreed that the sum of $24,000 was included as balance due from Ryan and Fry to Killian on the 1947 agreement.

There has never been any issue about the taxable nature of the $24,000. It is the additional $12,500 which is the sole subject matter under review. Killian reported this amount as long term capital gain on his 1954 return.

The Commissioner urged before the Tax Court, and again here, that the $12,500 was not gain from the sale or exchange of a capital asset, contending that this amount was received for anticipated future renewal commissions and/or as a separate item for the covenant not to compete contained in the agreement of 1954.

▐ Under our proscribed standard of review here[1] we cannot say that the Tax Court was clearly erroneous in rejecting these contentions and holding for the taxpayer.

There is competent evidence to support that court's findings, and its conclusion is in accord with legal precedent. First, Ryan and Fry certified that Killian was "not paid any money for any part of the agreement except the $12,500.00 for his customer list and the exclusive right to write such customer's insurance in the future. No anticipated renewal commissions were involved on policies outstanding at the time of the sale but only the right to write future insurance."

The Commissioner says that at this point the Tax Court simply erred in ac-

cepting this in view of a stated provision in the 1954 agreement that Killian would not engage in the insurance business in the area for at least 5 years.

The Tax Court's finding that Killian received no part of the amount paid as consideration for the covenant not to compete is supported not only by Killian's testimony and that of Ryan and Fry, but also by other persuasive evidence which clarifies the actual understanding of the parties at the time the agreement was made. All of the discussions between Killian and his partners leading to the 1954 agreement were precipitated by the fully disclosed fact that Killian was leaving Ohio for permanent residence in Florida due to his poor health and upon his physician's advice. Killian not only said he planned to leave Ohio, he actually did, and he has maintained his residence in Florida throughout the ensuing years. We cannot say that there is no competent showing which would require this court to reject as clearly erroneous the Tax Court's view that there really was no reason for Ryan and Fry to pay valuable consideration to Killian to stay out of the business area in Ohio.

In Kenney v. Commissioner, 37 T.C. 1161, the Court said: "The evidence is clear and uncontradicted that neither Edwards nor Educators placed any independent value on the covenant not to compete, and we can ascribe none to it." See also Brooks v. Commissioner, 36 T.C. 1128 (1961).

▐ We see it as did the Tax Court: Killian got the $12,500 here as consideration for the information which his personal business records disclosed, largely casualty and fire policy data. The residual data relating to health, accident or

---

1. Title 26 United States Code § 7482

"(a) Jurisdiction.—The United States Courts of Appeals shall have exclusive jurisdiction to review the decisions of the Tax Court, except as provided in section 1254 of Title 28 of the United States Code, in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury; * * *"

Rule 52, Federal Rules of Civil Procedure, establishes the standard of review of decisions of the district courts in civil actions tried without a jury in the following pertinent language: " * * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. * * *"

life policies represented a mere fragment of the whole, and there has been no issue made of this by the Commissioner either in the Tax Court or here. About this minimal and residual data, we agree with the view expressed by the Tax Court as follows:

"The rights to future commissions on life insurance policies were not transferred. No argument is made in the filed briefs with respect to the transfer of any future commissions on existing health, accident or life insurance policies and the parties seem to assume only petitioner's main business of fire and casualty insurance was the subject of the transfer."

The reality of the transaction here was that Killian sold to Ryan and Fry information concerning fire and casualty policies written by him over a period of many years. This information did indeed have intrinsic economic value in the nature of good will, which being made accessible to the purchasers gave reasonable expectation that "the old customers will resort to the old place," as it was put in Nelson Weaver Realty Co. v. Commissioner of Internal Revenue, 307 F.2d 897 (CA 5, decided September 12, 1962).

To the extent that the facts in the case here under review clearly established a sale of good will attendant to business, the holding of the Tax Court was in accord with this Courts' opinion in Nelson Weaver Realty Co. v. Commissioner of Internal Revenue, supra, and to this extent only is this case comparable to Nelson Weaver. We do not have in the instant case a bundle of property rights involved in a sale as did the Nelson Weaver case. There is nothing whatsoever here to be "comminuted into fragments," with the purchase price then to be allocated among the various assets, as suggested by Judge Rives in his special concurring and dissenting opinion in Nelson Weaver. And by the same token, there are no components of sale requiring separate scrutiny as discussed in Commissioner of Internal Revenue v. Ferrer, 304 F.2d 125 (CA 2, 1962). There was no bundle sold by Killian for the $12,500 payment under review here. The property sold had one single practical and legal attribute: good will.

■ It is settled that good will, as a distinct property right, is a capital asset under the tax laws. See Ensley Bank & Trust Co. v. United States, 154 F.2d 968 (CA 5, 1946), cert. den. 329 U.S. 732, 67 S.Ct. 94, 91 L.Ed. 633; V. L. Phillips & Co., Inc. et al. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., 199 F.2d 244 (CA 4, 1952); George J. Aitken et al. v. Commissioner of Internal Revenue, 35 T.C. 227 (1960).

The informational data handed over to Ryan and Fry was starkly naked of any embellishments, accoutrements or schemes which would change its character into a substitute for anticipated income, as the Commissioner has urged. If, in fact, there had been consideration, even in part, for a covenant not to compete the whole nature of the transaction would be screened for tax purposes through the fine mesh sieve of anticipated income and thus as ordinary gain on renewals of policies. But the core of the Commissioner's argument here fails. The Tax Court found, as a fact, and the record reflects competent and even convincing, evidence that Killian got nothing for the covenant not to compete.

We note particularly also that Killian had already received all of the commissions due him under the policies covered by the informational data, and that he had reported them all in his tax returns and received none thereafter. This is quite distinct from the sale of anticipated renewals from, for example, life insurance policies, which pay commissions after the first year without being rewritten in a new policy. There was no service fee or other definitive accrual right here. The Tax Court was correct in its determination that the payment to Killian under these facts was not a lump sum consideration essentially a substitute for what would otherwise be regarded at a future time as ordinary income. See Commissioner of Internal

Revenue, et al. v. P. G. Lake, Inc., et al., 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743. There was nothing here which was automatic, perfunctory or legally enforceable coming to Ryan and Fry which could be equated with Killian's future income. Neither they nor Killian could do more than project, prospectively, the value of Killian's relationship with the policy holders identified on the informational data.

It was this, and this alone, which the Tax Court found to have been sold. We can make nothing more of this agreement. The record supports its crucial factual findings in all particulars and the law was applied correctly. Its decision, therefore, is

Affirmed.