W. Tucker **BLAINE**, Sr., et al.,
Plaintiffs-Appellees,

v.

**UNITED STATES of America,**
Defendant-Appellant.

No. 29533.

United States Court of Appeals,
Fifth Circuit.

April 30, 1971.
Rehearing Denied and Rehearing En
Banc Denied June 21, 1971.

---

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., Wendell Barnett, Atty., Tax. Div., U. S. Dept. of Justice, Washington, D. C., Johnnie M. Walters, Asst. Atty. Gen., Tax Div., Lee A. Jackson, William L. Goldman, Thomas L. Stapleton, Attys., Dept. of Justice, Washington, D. C., George R. Pain, Asst. U. S. Atty., Houston, Tex., for appellant.

John A. Bailey, Morton L. Susman, Susman & Bailey, Houston, Tex., for appellees.

Before JONES, GEWIN and CLARK, Circuit Judges.

JONES, Circuit Judge:

Seven consolidated claims for the refund of $21,593.59 in Federal income taxes are involved in this appeal. Blaine Associates is a partnership operating an insurance agency. During the years in issue, 1962–1964, the partners, taxpayers, sought to depreciate certain insurance expirations[1] which the partnership had purchased under a contract calling for a maximum price of $96,000.-00 and a minimum price of $60,000.00.[2]

---

1. In its instructions to the jury, the court defined insurance expirations as being:
   * * * records of an insurance agency by which the agent has available a copy of the policy issued to the insured or records containing the date of the insurance policy, the name of the insured, the date of its expiration, the amount of insurance, premiums, property covered, and terms of insurance. This information enables the agent to contact the insured before the existing contract expires and arms him with the information essential to secure another policy and to present to the insured a solution for his insurance requirements. This expiration list is an asset that is characterized as intangible personal property.

2. The contract was terminable by either party on 90 days notice after payment of $60,000. The $96,000 price was approximately 3.2 times average annual commis-

The Commissioner disallowed the depreciation deductions for the stated reason that insurance expirations do not have a reasonably ascertainable useful life, and are in the nature of goodwill. The taxpayers paid the resulting deficiencies, and filed claim for refund. The refund claims were disallowed. Suit for refunds was brought in the district court. The jury returned a special verdict finding that the expirations involved had a useful life of six years. Judgment was entered for tax refunds reflecting the allowance of $96,000.00 in depreciation deductions over a six year period. Motion for judgment notwithstanding the verdict was made and overruled. The United States brings this appeal contending that insurance expirations are goodwill of an insurance agency and not depreciable as a matter of law, and even if they are depreciable the finding of a useful life of six years is clearly erroneous. Finally the Government argues that should depreciation be allowed, the judgment below should be reduced to properly reflect the actual cost incurred during the tax years in issue.

The expirations were purchased from one Fabian Corporation which had on the same day acquired the list from Garth Bates & Company, a mortgage loan business, which also operated a fire and casualty insurance business. In addition to the expiration list, Blaine acquired from Fabian Bates' covenant not to compete for the listed customers' business for a six year period. The covenant was a part of the transaction. Copies of the expiration list were retained by both Fabian Corporation and Bates Company. Under the agreement Bates was free to remain in the insurance business in the same area, and in fact did so. Nothing was transferred to the taxpayers other than the expiration list and the covenant not to compete.

Bates had sold most of its fire and casualty policies in connection with its home mortgage loan business. There was evidence that the average life of a mortgage loan was six or seven years. The taxpayers assert that the insurance renewal period would be the same as the duration of the mortgage servicing by the agent.

Witnesses testified that the insurance renewals in question were likely to be lost not only by the death of the insured or the termination of the mortgage loan, but also because homeowners frequently sell their homes, move away, or choose to do business with another company. Blaine experienced a steady attrition of customers that were among the Bates expirations. Over a third failed to renew the policies with Blaine when they first came up for renewal after the 1962 transaction. Many more were lost who renewed once, but not a second or third time. More were lost in the ensuing years.

It was stated in the testimony that referral business was not anticipated to any significant extent. The actual number of referrals amounted to less than one-third of one percent of the listings on the expiration list.

Persons in the insurance business, some of them being interested in the outcome of the cause, testified that the expirations had a terminable life usually fixed at six years. By these witnesses it was asserted that the homeowner's policy was tied to the homeowner's mortgage loan, the average life of both being about seven years. Some of the witnesses stressed the six year term of the covenant not to compete as fixing the useful life of the expiration list.

The taxpayers' burden in this case was to show by a preponderance of credible and convincing evidence that these expirations are to be legally distin-

sions from the accounts listed. The price was payable as follows: $24,000 down, the balance being payable quarterly in amounts equal to 30% of net commissions earned by Blaine Associates on new policies arising from the "expirations" list until the additional principal sum of $36,-

000 should be paid (i. e., a total of $60,000), when the percentage of commissions would be reduced 20%. The unpaid balance bore interest at the rate of 3% per annum which the agreed installment payments included.

guished from those in Commissioner of Internal Revenue v. Killian, 5th Cir. 1963, 314 F.2d 852. The governing rule was recently expressed in Salome v. United States where it was said:

> To qualify intangible property for amortization, taxpayers had the burden of establishing that it was of use in the business for only a limited time and that the length of this period was estimable with reasonable accuracy. Treas.Reg. § 1.167(a)–3 (1956). If they had developed evidence, their task would have been to distinguish the so-called renewals they purchased from the insurance dailies, subscription lists, and expirations involved in Commissioner of Internal Revenue v. Killian, 5th Cir. 1963, 314 F.2d 852. There the Court held that the dailies, subscription lists, and expirations common to a fire, casualty, and automobile agency are in the nature of goodwill, have an indeterminate life span, and therefore are not subject to a deduction for depreciation. 395 F. 2d 990 (5 Cir., 1968)

In Salome the Court held that the plaintiffs failed to meet their burden of proof. It is here concluded that the taxpayers have likewise failed to meet their burden of showing by a preponderance of credible, convincing evidence that the particular assets involved had a limited useful life which could be estimated with reasonable certainty. Other decisions are in accord regarding assets characterized as insurance expirations, dailies or lists. Marsh & McLennan v. Commissioner, 3rd Cir. 1969, 420 F.2d 667; Thoms v. Commissioner, 1968, 50 T.C. 247.

Much reliance has been placed by the taxpayers on the tie of the insurance with the mortgage servicing of the Bates organization. Whatever the evidence of this relationship might have shown with respect to a useful life of the insurance renewals while tied to the mortgage servicing, it cannot be said that the mortgage servicing has any bearing whatever on fixing a useful life of the insurance renewals after the severance of the expirations from the mortgage servicing.

The evidence relating to the referrals makes substantially no contribution to the solution of the problem here presented. The remaining evidence is that of the insurance agents, the experts so-called. These witnesses gave opinions unsupported by facts of substance and materiality that the expirations did have a terminable useful life which they generally fixed at six years. Neither this evidence nor the covenant not to compete are enough to take the case out of the operation of the Killian and Salome cases. The principles announced in these cases require the entry of a judgment notwithstanding the verdict. Boeing Company v. Shipman, 5th Cir. 1969, 411 F.2d 365. In order that such a judgment may be entered, the judgment of the district court is reversed and the cause is remanded.

Reversed and remanded.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.