Waldo E. **STEWART** and Jeanette
H. Stewart

v.

**UNITED STATES** of America.

Dwight W. **SLEEPER**, Jr. and
Joan Sleeper

v.

**UNITED STATES** of America.

Nos. CA 3–4048–C and CA 3–4049–C.

United States District Court,
N. D. Texas,
Dallas Division.

Jan. 28, 1974.

R. B. Cousins and James D. Webb, III, Thompson, Coe, Cousins, Irons & Porter, Dallas, Tex., for plaintiffs.

Frank D. McCown, U. S. Atty., Martha Joe Stroud, Asst. U. S. Atty., Charles Barnett and D. Wendell Barnett, Tax Div., Dept. of Justice, Dallas, Tex., for defendant.

OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

These are suits for recovery of income taxes paid to the United States and for statutory interest.

These cases were consolidated because Plaintiffs [1] are partners in an insurance agency, their claims are identical, they arise out of the same transactions and occurrences and the applicable law is the same.[2]

Plaintiffs in 1964 consolidated their insurance agencies and bought out a third agency. We are concerned with the latter transaction, the buying and selling of the third insurance agency.

Plaintiffs purchased the agency by written contract, a copy of which is appended to this Opinion as Appendix "A". The contract price was $125,000.00, broken down as $10,000.00 for goodwill, $107,500.00 for expirations,[3] $1,500.00 for furniture and fixtures, and $6,000.00 for a covenant not to compete. Plaintiffs also paid a $10,000.00 brokerage fee which was allocated proportionately to the same items.

Plaintiffs took deductions on their 1965, 1966 and 1967 returns for depreciation on the expirations. The deductions were disallowed by the Government. In 1967, Plaintiffs took deductions for the loss of good will in 1967 because they moved that year from the offices which they had taken over from the third agency and because they had changed the name of their agency from Sleeper-Stewart-Dean & Co. to Sleeper-Stewart Insurance Agency in that year. These deductions were also disallowed. Plaintiffs paid their assessed deficiencies and made claim for the alleged excess. These claims were denied and Plaintiffs timely filed these actions under 28 U.S.C., § 1346(a)(1). The Government has moved for Summary Judgment under Rule 56(b) of the Federal Rules of Civil Procedure, which the Court is of the opinion that it should be granted.

## I.

## DEPRECIATION OF EXPIRATIONS

Plaintiffs' first contention is that under § 167(a) of the Internal Revenue Code of 1954,[4] they should be allowed to deduct the cost of the expirations purchased from the Dean Agency over a period of five years. The Government's contention is that the expirations are in the nature of goodwill[5] un-

1. Plaintiffs Jeanette H. Stewart and Joan Sleeper are only formal parties in this case as they were joined only because they and their husbands, the real parties, filed joint income tax returns. Hereafter, all references to Plaintiffs will be to the husbands only.

2. See F.R.Civ.P., Rule 42(a).

3. Phillips & Co. v. Pennsylvania Threshermen, etc., 199 F.2d 244 (4th Cir. 1952). P. 246 " 'Expirations' in the insurance field has a definite and well recognized meaning; it embodies the records of an insurance agency by which the agent has available a copy of the policy issued to the insured or records containing the date of insurance policy, the name of the insured, the date of its expiration, the amount of insurance, premiums, property covered and terms of insurance. This information enables the agent to contact the insured before the existing contract expires and arms him with the information essential to secure another policy and to present to the insured a solution for his insurance requirements. It has been determined that this information is of vital assistance to the agency in carrying on the insurance business and it has become, in the insurance field, recognized as a valuable asset in the nature of goodwill."

4. "General rule.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—
   (1) of property used in the trade or business, or
   (2) of property held for the production of income."

5. "Justice Story:
'Good will may be properly enough described to be the advantage or benefit which is acquired by an establishment beyond the mere value of the capital stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers on account of its local position, or common celebrity, or reputation for skill, or influence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices.'
Story, Partnerships, § 99."
Masquelette v. Commissioner, 239 F.2d 322 (5th Cir. 1956).

der § 167(a)(1) of the Internal Revenue Code, Regulation § 1.167(a)–3 [6] and that they are therefore a non-depreciable and non-deductible item.[7]

The Fifth Circuit in the case of Commissioner v. Killian [8] ruled that the expirations in that case " . . . had one single practical and legal attribute: good will." [9] In that case, only the expirations and a covenant not to compete were transferred. No right to future commissions and no contracts were transferred.[10]

Since Killian, there have been two Fifth Circuit cases concerning expirations, Salome v. United States [11] and Blaine v. United States.[12] The Court in Blaine gave an apt description of the substance of these cases when it said:

> "The taxpayer's burden in this case was to show by a preponderance of credible and convincing evidence that these expirations are to be legally distinguished from those in . . . (Killian)." [13]

In neither case did the taxpayers meet their burden.

How does this holding translate into grounds for the granting of a summary judgment? The facts in Blaine are illuminating.

The expirations in Blaine were for the most part of insurance policies that were issued in connection with mortgage loans that had been made by the seller of the expirations. The taxpayer was arguing that past history had shown that no referrals would be made from the expirations and that the policies would only be renewed until the mortgage loan was paid. This action was an attempt to show that the expirations in question were a part of the insurance business that is quite different from the bulk of the insurance business.

In our case, we are not concerned with an odd corner of the insurance business, Plaintiffs' agency stands in midstream. Their allegations and answers to the interrogatories propounded to them by the Government show that the facts of their case fit squarely with the facts of Killian. The affidavits submitted by Plaintiffs of their experts and of themselves do not raise any facts other than those of Killian.[14] Even if these actions were allowed to go to trial, the Court would be required to direct a verdict by the standard of Killian, Salome and Blaine. In this kind of situation, a summary judgment should be ordered.[15]

## II.

## DEDUCTIBLE LOSS OF GOODWILL

Plaintiffs' second contention is that they suffered a deductible loss [16] when they removed the name of the agency that they had bought from the name of their partnership and moved their office from the building that had

---

6. Regulation § 1.167(a)–3 reads in part: "No deduction for depreciation is allowable with respect to goodwill."

7. Marsh & McLennan Incorporated v. Commissioner, 420 F.2d 667 (3rd Cir. 1969).

8. 314 F.2d 852 (5th Cir. 1963).

9. Ibid., p. 855.

10. One must be very careful to distinguish between the expiration cases such as we have here and the sale of contracts cases such as Super Food Services Inc. v. United States, 416 F.2d 1236 (7th Cir. 1969). In the latter type of cases, more is transferred than a mere list of insurance policies that will expire.

11. 395 F.2d 990 (5th Cir., 1968).

12. 441 F.2d 917 (5th Cir. 1971), cert. den. 404 U.S. 952, 92 S.Ct. 286, 30 L.Ed.2d 269 (1971).

13. Ibid., p. 918.

14. The experts that Plaintiffs would call at trial are other insurance agents in the State of Texas who most assuredly are interested in the outcome of this litigation.

15. See Miller v. Hoffman, 1 F.R.D. 290 (D. C., N.J., 1940), and United States v. Daubendiek, 25 F.R.D. 50 (D.C., N.D.Iowa 1959), and the cases cited therein.

16. Section 165(a) of the Internal Revenue Code of 1954 which reads: "*General rule.*—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise."

been occupied by the agency that they had bought. Plaintiffs wish to deduct the total of $10,800.00 (contractual price of the goodwill and proportionate share of the brokerage fee) as a loss of goodwill for the year 1967.

What Plaintiffs in effect are saying is that they abandoned the goodwill that they bought in 1964.

The important case in this area of tax law is Metropolitan Laundry Co., Limited v. United States.[17] Metropolitan had laundry facilities and routes in both San Francisco and Oakland, California, before World War II. During the war, the Federal Government took over its facilities in San Francisco. Metropolitan then found it did not have enough capacity in its Oakland laundry to take care of its routes in San Francisco. It therefore dropped all of its San Francisco routes. The District Court allowed Metropolitan to deduct a sum for goodwill lost because of the abandonment of its business in San Francisco.

The case is important in that it recognized that goodwill can be disposed of in a situation other than when a whole business is disposed of, that is, when either the business is disposed of in one particular geographical area or when one entire product line is abandoned.

The Sleeper-Stewart Insurance Agency situation does not fit within the rule of *Metropolitan*. Plaintiffs did not abandon either business in any area or any product line. The distance they moved was only a few blocks. Their answer to the interrogatories showed that they continued to use the expirations after the move that they had bought from the Dean Agency. So they cannot say that they dropped a line of business that they acquired from the Dean Agency.[18]

The goodwill of the Dean Agency is contained in the expirations that were acquired. The business of the Dean Agency was and is contained in the expirations and the covenant not to compete. Plaintiffs used the expirations after 1967, so they continued the business and the goodwill that they had acquired. By this action they signified that they agreed that the goodwill acquired still had life. It possibly could have gone down in value but fluctuations in value are not events of which the Code takes notice.[19] But in any event, Plaintiffs did not dispose of any part of their business and therefore no goodwill was disposed of.

For the foregoing reasons, the Government is granted summary judgment and its attorneys are requested to draw up a proposed form of judgment to be approved as to form by Plaintiffs' attorneys and submitted to the Court.

### APPENDIX A

### CONTRACT OF PURCHASE AND SALE

STATE OF TEXAS
COUNTY OF DALLAS

KNOW ALL MEN BY THESE PRESENTS THAT:

This contract of purchase and sale is made by and between E. G. DEAN and JOEL S. LANDER, doing business as a partnership under the firm name and style of E. G. Dean & Company, hereinafter called "Seller" and DWIGHT SLEEPER and WALDO E. STEWART, doing business under the firm name and style of SLEEPER-STEWART COMPANY, herein called "Purchaser", for the purposes and considerations herein set forth;

17. 100 F.Supp. 803 (D.C., N.D.Cal.1951); cited in Strauss v. United States, 199 F. Supp. 845 (D.C., W.D.La.1961), apparently the only reported case in this area of law from a court within the boundaries of the Fifth Circuit.

18. It is doubtful that Plaintiffs could contend that these expirations were a separate line of business in the first place as they are engaged in only one line of business to begin with.

19. 5 Mertens § 28.14, p. 39, and the cases cited thereunder.

WITNESSETH:

WHEREAS, E. G. Dean and Joel S. Lander are equal partners in Seller; and,

WHEREAS, Seller is engaged primarily as an insurance agent in the business of conducting a fire and casualty insurance agency; and,

WHEREAS, Seller is desirous of selling certain, but not all, or its assets used in the fire and casualty insurance agency to Purchaser upon the terms and conditions herein set forth; and,

WHEREAS, Purchaser desires to purchase certain assets from Seller upon the terms and conditions herein set forth;

NOW, THEREFORE, in consideration of the premises and other good and valuable considerations, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

## I.

### A. *Sale of Good Will*

1. Seller hereby agrees to sell, assign and transfer to Purchaser all of Seller's right, title and interest in and to the good will and going concern value of the fire and casualty insurance agency business conducted by Seller in the Trinity Universal Building at Ross Avenue and Harwood Street, Dallas, Texas, and the exclusive and unencumbered right to use the name "E. G. Dean & Company" hereafter at any time in any lawful manner including the right to file assumed name certificates in consideration for the payment of $10,000.00 in cash or by cashier's check. Seller agrees to change its partnership name if the partnership continues. Purchaser agrees to hold Seller and its partners harmless from any and all claims, demands, costs and causes of action of any nature whatsoever arising out of Purchaser's use of the aforesaid name.

### B. *Sale of Expirations*

2. Seller hereby agrees to sell, assign, and transfer to Purchaser all of Seller's right, title and interest in and to Seller's daily reports, policy forms and expirations (customer lists) as that term is commonly understood in the insurance business in Dallas, Texas in consideration for the purchase price of $107,500.00, to be paid as follows:

(1) $5,000.00 in cash or cashier's check payable to E. G. Dean and Joel Lander upon execution of this agreement. If the transaction is completed, the $5,000.00 will be applied as part of the cash down payment for the expirations. If the transaction is not completed, the $5,000.00 shall be retained by Seller as liquidated damages.

(2) $14,375.00 in cash or cashier's check payable to E. G. Dean and Joel S. Lander on closing the sale.

(3) Two promissory notes each in the amount of $44,062.50 executed by both Dwight Sleeper and Waldo E. Stewart as makers, one payable to the order of E. G. Dean and one to the order of Joel S. Lander. Each note will bear interest at the rate of 5% per annum, and will be payable in sixty (60) level monthly installments of $1,697.70 on the 10th day of each month commencing January 10, 1965. Each note will contain the usual provisions for acceleration in the event of default to pay any installment at the option of the owner or holder of said note and shall also contain usual and customary provisions for the payment of attorneys' fees and expenses in the event such note or notes are placed in the hands of attorneys for collection. It is agreed that Seller will retain a lien upon all the expirations, good will and name herein conveyed to secure the payment of the said note. The parties agree that the value of the expirations is $107,500.00.

### C. *Benefit of Good Will*

3. In order to assure that the Purchaser will have the benefit and enjoyment of the good will, name, going concern value and expirations, the Seller (and the individual partners, where so indicated) agree to do the following:

(1) The partners individually and as partners and the partnership E. G. Dean & Company agree that for a

period of five (5) years from and after closing that neither of the partners nor the partnership will own, manage, control or in any way be connected with directly or indirectly in any local recording agency writing property and casualty insurance in the County of Dallas, Texas, nor will they solicit the sale of such insurance for the period of time stated in Dallas County, Texas, either directly or indirectly, as agents, solicitors or employees or in any other manner on behalf of any person, firm or corporation. It is agreed that the value of this covenant not to compete is $6,000.00 and shall be payable by Purchaser to Seller by cashier's check on January 10, 1965. If Seller or either partner breaches the covenant not to compete in this paragraph, Purchaser or its heirs, administrators, successors, or assigns shall have the remedies of specific performance or action for damages and if any sum of money is owed to Seller pursuant to the above described promissory note or otherwise, Purchaser shall have full right of offset for any damages incurred or resulting from breach of said covenant to the extent finally determined by a court of competent jurisdiction, provided the right of offset shall be limited to the note payable to the individual who breaches the covenant. The parties understand and agree that the partners of the partnership intend to retire from the property and casualty insurance business and that neither of them nor the partnership has any intention of going into such business or competing with Purchaser, and that the purpose of this agreement is to assure that the good will, name, going concern value and expirations being sold will be acquired in their entirety by Purchaser.

(2) Seller agrees to assign the lease covering the premises at the Trinity Universal Building where E. G. Dean & Company presently conducts its fire and casualty insurance business. This undertaking and the entire agreement is conditioned upon Seller securing the right to assign the lease covering said premises. If Seller obtains the right to assign the lease, it shall assign the lease and Purchaser will assume all obligations of Seller thereunder and will hold Seller harmless against any loss and from any costs or expenses it may incur subsequent to the closing date under this agreement with respect to said lease.

(3) Seller agrees to assign, transfer and deliver the letter heads and telephone numbers to Purchaser at the closing.

(4) Seller agrees that it has not and will not give copies of its expirations, files and telephone numbers to any person other than Purchaser, except so far as the information has been made available to insurance companies and the insured parties in the regular course of business.

(5) This agreement is conditioned upon Seller's obtaining the approval of the insurance companies with which Seller does business to the sale.

Seller (and, where applicable, the partners) are agreeing to the foregoing in order to secure Purchaser in the acquisition of the good will, name, going concern value and expirations, and the parties agree no additional cash consideration is being paid therefor.

## II.

### Sale of Other Assets

4. Seller hereby agrees to sell, assign and transfer all of its right, title and interest in and to the furniture, fixtures, office machines and supplies described in Exhibit "A" attached hereto to Purchaser for and in consideration of the sum of One Thousand Five Hundred Dollars ($1,500.00), to be paid by Purchaser in cash or by cashier's check to Seller at the closing.

## III.

### Retention of Assets

5. Except for the assets specifically set forth in the preceding paragraphs,

Seller does not agree to sell, assign or transfer any other assets, and expressly retains all of its cash, accounts receivable, and notes receivable for business (including binders) written through August 31, 1964 ("the effective date") and all of its oil royalties, stocks, bonds, life insurance business and other assets on hand on the effective date. Seller also specifically retains its accounts payable, none of which are being assumed by Purchaser. Purchaser agrees to co-operate with Seller to facilitate the collection of its accounts receivable and the payment and discharge by Seller of its accounts payable and that Purchaser will make the books of account and records available to assist Seller in such collections and payments. Seller agrees that it will in normal business fashion pay and satisfy all accounts payable by E. G. Dean & Company as Seller to any person to whom such accounts are owed including normal accounts to insurance companies. Purchaser, however, assumes all obligations for the prompt payment of all return commissions due on all policies applicable to cancellation of those policies, notice of which cancellation is sent or received on and after September 1, 1964.

## IV.

### Representations and Closing

6. Seller has furnished to Purchaser a list or bordereau of all outstanding policies issued by and through its agency and it represents that such list is a complete and accurate listing of all the policies outstanding upon the time of delivery of such list.

7. If Seller now has any contract with any fire or casualty insurance company under the terms of which such company pays to Seller an additional commission contingent upon losses paid or incurred by such company in respect to business written by the Seller, and if at the end of the calendar year such company owes to Seller and the successor agency a contingent commission, then it is agreed that such contingent commission will be divided between Seller and Purchaser in such fashion that Seller will receive two-thirds ($\frac{2}{3}$) of such payment and the Purchaser one-third ($\frac{1}{3}$) of such payment.

8. Seller warrants and represents that as of this date it has not sold, assigned, pledged or mortgaged or in any way alienated any of the assets mentioned herein to be conveyed; and it further represents and warrants that such action will not be taken by it between the date of this contract and the effective date hereof, and it will deliver the assets free and clear of encumbrances upon closing.

9. Seller and the individual partners agree that they will co-operate fully with Purchaser in connection with the transfer of the business and will if requested execute letters of notification or solicitation to any insured contained in the customer or expiration list above described and which is sold hereunder.

10. Purchaser represents that it has authority to execute this agreement, that Sleeper and Stewart are licensed to conduct a fire and casualty business in Texas, that it (through its representatives) is familiar with the business of Seller and the accounts with brokers, solicitors and special accounts, and that it is familiar with Seller's customers' accounts, specifically including without limitation the Moss Gardin account.

11. Purchaser agrees to co-operate with Seller and to permit Seller to use Purchaser's books and records to the extent reasonably required by Seller in winding up its affairs and preparing its federal and other tax returns. Seller will retain such financial books and records that are not necessary to the transfer of the expirations and business to Purchaser.

12. Purchaser agrees to pay any brokerage commission that may be payable with respect to the sales hereunder. Seller represents that it has incurred no obligation as to the payment of any brokerage commission with respect to this transaction.

13. The closing will take place at such time after the effective date as Purchaser shall select, provided if the closing does not take place prior to October 1, 1964, this agreement shall then terminate, and Seller shall retain the $5,000.00 deposit as liquidated damages. The closing shall take place in the offices of Wynne, Jaffe & Tinsley at 2808 Southland Center, Dallas, Texas, commencing at 10:00 a. m. on the closing date.

14. At the closing Purchaser will deliver to Seller the following:

(a) A cashier's check or cash in the amount of $25,875.00 which together with the earnest money deposit of $5,000.00 paid on execution hereof will constitute the total cash down payment requirements with respect to the several sales under this agreement.

(b) Purchaser's promissory notes in the form described in B. 2.(3) in the aggregate amount of $88,125.00.

(c) An assumption agreement of the lease covering the premises at Trinity Universal Building presently occupied by E. G. Dean & Company.

15. At the closing Seller will deliver to Purchaser the following:

(a) All files, documents and records of or relating to the fire and casualty insurance business presently conducted by Seller being transferred hereunder.

(b) Possession of the premises of E. G. Dean & Company in the Trinity Universal Building.

(c) Assignment of the lease covering said premises.

(d) Possession of the furniture, fixtures and equipment set forth in Exhibit "A" attached hereto.

(e) Assignments, bills of sale and other documents to transfer title to the assets being sold to the Purchaser.

16. The parties agree to execute and deliver such additional documents and instruments and to perform such other acts that may be necessary or useful to the consummation of the sales and assignments contemplated by this agreement.

17. Prior to closing Seller shall retain complete ownership, possession and control of the properties to be sold pursuant hereto, and will continue to operate the partnership business as it has been heretofore conducted.

IN WITNESS WHEREOF, the parties hereto have set their signatures this 22nd day of August, 1964, at Dallas, Texas.

E. G. DEAN & COMPANY
A Partnership
(s) By E. G. Dean
E. G. Dean, Partner
(s) Joel S. Lander
Joel S. Lander, Partner
(s) E. G. Dean
E. G. Dean, Individually
(s) Joel S. Lander
Joel S. Lander, Individually

SLEEPER-STEWART COMPANY
(s) By Dwight Sleeper, Jr.
Dwight Sleeper
(s) W. E. Stewart
Waldo E. Stewart
(s) Dwight Sleeper, Jr.
Dwight Sleeper, Individually
(s) W. E. Stewart
Waldo E. Stewart, Individually

EXHIBIT A
1 – Monroe Calculator
1 – Marchant Calculator
1 – Remington Adding Machine
3 – Typewriter Desks
3 – Secretarial chairs
2 – Rolling Portable Side Files
1 – Wall File – Two Sections – Containing Dailies
3 – Five-Drawer Steel Files
1 – Large Wood File
4 – Royal Typewriters – (Two electric and two manual)