T.C. Memo. 1996-28


UNITED STATES TAX COURT


THE BRINSON COMPANY-MIDWEST, INC., ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 26949-93, 26950-93,   Filed January 25, 1996.
            26951-93.


William A. Neilson, for petitioners.

Kathleen O. Lier, for respondent.


MEMORANDUM OPINION


WRIGHT, Judge:  This matter is before the Court on

petitioners' motion for award of reasonable litigation and

_____

    [1]Cases of the following petitioners are consolidated
herewith:  The Brinson Company, Inc., docket No. 26950-93; and
The Brinson Company-Texas, Inc., docket No. 26951-93.

administrative costs under section 7430[2] and Rule 231. Prior to trial, the parties reached a basis for settlement. When the cases were called from the calendar on March 13, 1995, in New Orleans, Louisiana, the parties appeared and filed decision documents reflecting their settlement. Accordingly, this Court entered decisions on March 16, 1995. These decisions were subsequently vacated and set aside on May 30, 1995, and petitioners were permitted to file their motion for award of reasonable litigation and administrative costs. On August 14, 1995, respondent filed a notice and supporting memorandum of law objecting to petitioners' motion for award of reasonable litigation and administrative costs.

The primary issue for decision is whether petitioners have established that respondent's position in the underlying actions was not substantially justified. If we find that respondent's position was not substantially justified, we then must determine whether the litigation and administrative costs claimed by petitioners are reasonable. As is discussed herein, we hold that respondent's position in the underlying actions was substantially justified.

Background

Upon review of the pleadings, petitioners' motion for reasonable litigation and administrative costs, and respondent's

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

memorandum in support of her notice of objection to petitioners' motion, the facts underlying this action may be best surmised as follows. Each petitioner is a corporation organized under the laws of the State of Louisiana. Petitioner Brinson Company-Texas, Inc., and petitioner Brinson Company-Midwest, Inc., are both wholly owned subsidiaries of petitioner Brinson Co., Inc. (hereinafter Brinson). Petitioners are involved in the importation and distribution of German automobile parts. Prior to December 23, 1985, Brinson was a family-owned closely held corporation. Gunther G. Wittich and Brigitte G. Wittich, husband and wife, were the principal owners. Their two sons, Rainier R. Wittich and Michael W. Wittich, each maintained a less significant ownership position.

During the first half of the 1980's, a somewhat less than harmonious relationship existed between Gunther and Brigitte, both personally and with regard to the operation of Brinson. The couple received a divorce decree in March 1985. Following the divorce, the family divided and formed two factions, Gunther and Rainier on one side and Brigitte and Michael on the other side. Difficulties quickly ensued because both alliances controlled exactly one-half of Brinson, and neither side could agree with the other regarding its operation. These problems were resolved in 1985 when Brinson's board of directors, consisting of Gunther, Brigitte, and Rainer, voted to terminate Brigitte and Michael from Brinson's employ. On October 9, 1985,

5 days following her employment termination, Brigitte filed a motion seeking permanent alimony in Louisiana State court.

Two months after their employment relationship ended, Brigitte and Michael entered into stock redemption and noncompetition agreements with Brinson. Brigitte was 62 years old at the time these agreements were executed. The terms of the stock redemption agreement called for Brinson to purchase the entire stock interests of both Brigitte and Michael. The terms of the noncompetition agreement required Brinson to pay a specific amount annually to both Brigitte and Michael for a period of 10 years in exchange for their agreement not to compete with Brinson for a period of 15 years. By amendment, on April 3, 1986, this 15-year term was reduced to a 5-year term.

In February 1986, after Brigitte and Brinson executed the noncompetition and redemption agreements, Brigitte sought to have her claim for permanent alimony dismissed. On February 14, 1986, an order was issued by a Louisiana State court granting her motion to dismiss.

On January 27, 1987, 13 months after the execution of the original noncompetition agreement, Brigitte died from cirrhosis of the liver. Brigitte was 63 years old at the time of her death.

Brinson amortized the noncompetition agreements and allocated a portion of the deductions to its subsidiaries, Brinson Company-Texas and Brinson Company-Midwest. On their

Federal income tax returns for taxable years 1989 and 1990, petitioners claimed their allocable portions of the amortized noncompetition agreements with respect to both Brigitte and Michael. Although respondent was originally satisfied with the valuation of the noncompetition agreement with respect to Michael, respondent was not so satisfied with respect to Brigitte. Maintaining that the noncompetition agreement with respect to Brigitte was inaccurately valued, respondent mailed a notice of deficiency with respect to taxable years 1989 and 1990 to each petitioner on September 24, 1993. In each deficiency notice, respondent disallowed the portion of the amortization of the noncompetition agreement allocated amongst petitioners with respect to Brigitte.

In January 1995, less than 2 months prior to trial, Michael informed respondent that his testimony at trial would differ from information he had earlier provided to respondent's agent. In light of this information previously unknown to respondent, respondent reassessed her position and ultimately conceded each case. This full concession was reflected in decisions filed with this Court when the cases were called for trial, but their decisions were subsequently vacated in order to permit petitioners to file their motion for reasonable costs.

Discussion

Under section 7430(a), a "prevailing party", in specified civil tax proceedings, may be awarded a judgment for reasonable

administrative and litigation costs. To be a prevailing party under section 7430(c)(4), the party seeking such award must: (1) Establish that the position of the United States in the proceeding was not substantially justified, sec. 7430(c)(4)(A)(i); (2) substantially prevail with respect to the amount in controversy, or have substantially prevailed with respect to the most significant issue or set of issues presented, sec. 7430(c)(4)(A)(ii); and (3) establish that the party had the requisite net worth at the time the proceeding was commenced, sec. 7430(c)(4)(A)(iii).

Additionally, a judgment for administrative and litigation costs will not be awarded under section 7430(a) unless the Court determines: (1) That the prevailing party has exhausted the administrative remedies available within the Internal Revenue Service (Service), sec. 7430(b)(1); and (2) that the prevailing party has not unreasonably protracted the Court proceeding, sec. 7430(b)(4). See Bragg v. Commissioner, 102 T.C. 715, 717 (1994); Polyco, Inc. v. Commissioner, 91 T.C. 963, 966-967 (1988).

Respondent agrees that petitioners substantially prevailed in the underlying actions, met the net worth requirement, have not unreasonably protracted the Court proceeding, and have exhausted their administrative remedies. Thus, we focus our analysis on considering whether respondent's position was substantially justified.

Petitioners bear the burden of proving that respondent's position was not substantially justified. Rule 232(e); Estate of Johnson v. Commissioner, 985 F.2d 1315, 1318 (5th Cir. 1993); Bragg v. Commissioner, supra; Coastal Petroleum Refiners, Inc. v. Commissioner, 94 T.C. 685, 688 (1990). Petitioners, however, need not show bad faith to establish that respondent's position was not substantially justified for purposes of a motion for administrative and litigation costs under section 7430. Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991); Powers v. Commissioner, 100 T.C. 457 (1993), affd. in part and revd. in part 43 F.3d 172 (5th Cir. 1995).

Whether the position of the United States in this proceeding was substantially justified depends on whether respondent's position and actions were reasonable in light of the facts of the case and the applicable legal precedents. Pierce v. Underwood, 487 U.S. 552 (1988); Bragg v. Commissioner, supra at 716; Coastal Petroleum Refiners, Inc. v. Commissioner, supra at 688. The reasonableness of respondent's position necessarily requires considering what respondent knew at the time she took her position and the events that occurred afterwards. Rutana v. Commissioner, 88 T.C. 1329, 1334 (1987); Don Casey Co. v. Commissioner, 87 T.C. 847, 862 (1986). Generally, respondent's concession of all or part of a case is not by itself sufficient to establish that respondent's position was unreasonable. Sokol v. Commissioner, 92 T.C. 760, 767 (1989); Wasie v. Commissioner,

86 T.C. 962, 969 (1986).  A position is substantially justified if the position is "justified to a degree that could satisfy a reasonable person".  Pierce v. Underwood, supra at 565; see also Lennox v. Commissioner, 998 F.2d 244, 248 (5th Cir. 1993), revg. in part T.C. Memo. 1992-382; Norgaard v. Commissioner, 939 F.2d 874, 881 (9th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1989-390.  That standard is the same as the reasonable basis both in fact and law standard used by this and other courts.  Pierce v. Underwood, supra at 564; Powers v. Commissioner, supra at 471.

Other factors that may be taken into account in making this determination include (1) whether the Government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of the case, (2) whether the Government pursued the litigation against the taxpayer for purposes of harassment or embarrassment, or out of political motivation, and (3) such other factors as the Court finds relevant.  H. Rept. 97-404, at 12 (1981); see also Sher v. Commissioner, 89 T.C. 79, 85 (1987), affd. 861 F.2d 131 (5th Cir. 1988).

With respect to a claim for reasonable administrative costs, the phrase "position of the United States", as used in section 7430, means the position taken by the United States in any administrative proceeding to which section 7430 applies as of the earlier of (1) the date of the receipt by the taxpayer of the

notice of decision of the Appeals Office of the Service or (2) the date of the notice of deficiency. Sec. 7430(c)(7)(B). It appears from each record that prior to the issuance of the deficiency notices, a notice of decision was not sent to petitioners. Accordingly, for purposes of petitioners' claim for reasonable administrative costs, the position of the United States means the position taken by the Service in an administrative proceeding to which section 7430 applies as of September 24, 1993, the date of the notice of deficiency in the instant cases.

With respect to a claim for reasonable litigation costs, the phrase "position of the United States", as used in section 7430, means the position taken by the United States in a judicial proceeding to which section 7430 applies. Sec. 7430(c)(7)(A). Thus, the position of the United States means the position taken by respondent in the instant cases. Generally, the Commissioner initially takes a position on the date an answer is filed in response to the petition. Huffman v. Commissioner, 978 F.2d 1139, 1148 (9th Cir. 1992), affg. in part and revg. in part T.C. Memo. 1991-144. Respondent filed an answer to each action on February 25, 1994. Therefore, the position of the United States for purposes of petitioners' claims for reasonable litigation costs is the position first taken by respondent in the instant cases on or after February 25, 1994.

Generally, when the Commissioner presents evidence which, if credited by the Court, is sufficient to support a decision in the Commissioner's favor, there will be a reasonable basis for the Commissioner's position. See Wilfong v. United States, 991 F. 2d 359, 369 (7th Cir. 1993).

From the onset of the underlying actions, respondent questioned the valuation of the covenant not to compete. Respondent was primarily concerned with how the total amount paid to Brigitte was allocated between the stock redemption price and the covenant not to compete. Such concern is clearly legitimate. There has been a great deal of litigation involving the allocation of a purchase price to a covenant not to compete. See, e.g., Throndson v. Commissioner, 457 F.2d 1022, 1024 (9th Cir. 1972), affg. Schmitz v. Commissioner, 51 T.C. 306 (1968); Commissioner v. Danielson, 378 F.2d 771, 775 (3d Cir. 1967), vacating and remanding 44 T.C. 549 (1965); Ullman v. Commissioner, 264 F.2d 305, 307-308 (2d Cir. 1959), affg. 29 T.C. 129 (1957); Major v. Commissioner, 76 T.C. 239 (1981). The principal inquiry has been whether the amount allocated to the covenant not to compete reflected business reality or whether that amount was artificially allocated to such covenant solely for tax purposes.

Covenants not to compete are intangible capital assets and their cost may be amortized over their useful lives. See Peterson Machine Tool, Inc. v. Commissioner, 79 T.C. 72, 80

(1982), affd. 54 AFTR 2d 84-5139, 84-2 USTC par. 9885 (10th Cir. 1984); sec. 1.167(a)-3, Income Tax Regs. However, the fact that a taxpayer has allocated a specific amount to a covenant not to compete is not controlling for tax purposes. Lemery v. Commissioner, 52 T.C. 367, 375 (1969), affd. per curiam 451 F.2d 173 (9th Cir. 1971). We may look beyond the formal dealings of the parties to see if the form reflects the substance of those dealings. Annabelle Candy Co. v. Commissioner, 314 F.2d 1, 5 (9th Cir. 1962), affg. T.C. Memo. 1961-170; Buckley v. Commissioner, T.C. Memo. 1994-470. In order for the form in which the parties have cast their transaction to be respected for tax purposes, the covenant not to compete must have some independent basis in fact or some arguable relationship with business reality such that a reasonable person, genuinely concerned with his or her economic future, might bargain for such an agreement. Schulz v. Commissioner, 294 F.2d 52, 55 (9th Cir. 1961), affg. 34 T.C. 235 (1960). This test is commonly referred to as the "economic reality" test. See Patterson v. Commissioner, 810 F.2d 562, 571 (6th Cir. 1987), affg. T.C. Memo. 1985-53.

The Court of Appeals for the Fifth Circuit has held that determining whether a covenant has economic reality is a threshold inquiry. Balthrope v. Commissioner, 356 F.2d 28, 31 (5th Cir. 1966), affg. T.C. Memo. 1964-31. The essential

question is whether the payments allocated to the covenant not to compete are, in fact, payments for something else. Id.

Using the reasoning set down in the above-cited cases and similar cases, and based on the facts as surmised from the records of the instant cases, we conclude that the position maintained by respondent had a reasonable basis in both fact and law throughout both proceedings. The facts as understood by respondent, especially when viewed collectively, form the foundation of her position. The stock redemption and the covenants not to compete were executed simultaneously. Michael informed respondent's agent that significant negotiation did not precede the allocation and that both he and Brigitte simply accepted the offer as presented by Brinson. Michael further informed respondent's agent that the underlying factor motivating Brigitte's and his decision to accept the offer as presented, without consideration on their behalf, was the desire to quickly sever all ties with Brinson.

Additionally, respondent construed the available facts pertaining to Brigitte's age and death as suggesting that the covenant not to compete was erroneously valued. The original covenant not to compete had a 15-year life and was executed when Brigitte was 62 years of age. Respondent's concern was whether and to what extent Brigitte could pose a competitive threat to Brinson for a 15-year period ending when Brigitte would be 77 years old. Moreover, in light of Brigitte's having died from

cirrhosis of the liver 13 months after executing the covenant not to compete, respondent concluded that Brigitte was in a state of poor and declining health at the time the covenant not to compete was executed. Furthermore, given the nature of Brigitte's illness, respondent also assumed that Brigitte's ailing health was known by both parties at the time the covenant was executed. See Commissioner v. Killian, 314 F.2d 852 (5th Cir. 1963), affg. T.C. Memo. 1961-83; Krug v. Commissioner, T.C. Memo. 1981-522.

Three other events further caused respondent concern with regard to the valuation of the covenant not to compete. First, respondent explains that, because the execution of the covenant not to compete followed rather than preceded Brigitte's termination from Brinson, Brinson may not have perceived Brigitte as a legitimate competitive threat. Such a perception by Brinson, respondent contends, lends support to her position that the covenant not to compete was overvalued. Second, respondent explains that Brigitte sought and received a dismissal of her alimony claim against Gunther immediately following the execution of the covenant not to compete. Respondent's concern here was that the covenant not to compete may have contained an alimony component. See Balthrope v. Commissioner, supra. Third, respondent explains that the covenant not to compete was not designed to terminate upon the death of Brigitte; rather, its terms required continued payments payable to her estate. Respondent maintains that this fact lends further support to her

concern that the payments to Brigitte were for a purpose other than to prevent competition. See id.; Ackerman v. Commissioner, T.C. Memo. 1968-254.

Petitioners contend that respondent's reallocation between the stock redemption and the covenant not to compete is erroneous. Petitioners focus their argument on respondent's assumption and conclusion regarding the health and abilities of Brigitte. Petitioners do not dispute that Brigitte died from cirrhosis of the liver; however, petitioners explain that Brigitte's health complications occurred and became known to the parties after the agreements were executed.

Petitioners had ample opportunity to dispel respondent's erroneous assumption, yet they failed to do so. On at least two occasions, respondent's agent sought access to Brigitte's medical records only to be denied the opportunity by petitioners.

Petitioners also argue that they computed the value allocated to the covenant several times and that their valuation, and not respondent's valuation, is correct. This may very well be true, but petitioners failed to produce their computations or deliver them to respondent when requested. In fact, the record indicates that petitioners were uncooperative with respondent up until early 1995, shortly before these cases were scheduled for trial.

Having reviewed these cases based upon the available information, we find respondent's position credible. Petitioners

have not carried their burden of demonstrating that the position of the United States was not substantially justified.  Given the facts available to respondent as of the time period applicable under section 7430(c)(7) in respect of each proceeding, legal precedent did substantially support that position.  Consequently, it is not necessary for us to consider the reasonableness of the costs claimed by petitioners.  Accordingly, petitioners' motion is denied.

To reflect the foregoing,

<u>Appropriate orders and</u>

<u>decisions will be entered.</u>